**Jerald W. VACURA, et al., Appellants,**

**v.**

**HAAR'S EQUIPMENT, INC., et al., Defendants,**

**Borg-Warner Acceptance Corporation, d.b.a. Borg-Warner Leasing, Appellants.**

**ALLIS–CHALMERS CREDIT CORPORATION, et al., defendants and third-party plaintiffs, Respondents,**

**v.**

**Jim POHLMAN, Third-Party Defendant,**

**ALLIS–CHALMERS CREDIT CORPORATION, et al., defendants, third-party plaintiffs and fourth-party plaintiffs, Respondents,**

**v.**

**Harry MARKS, Fourth-Party Defendant.**

**No. C8–83–990.**

Supreme Court of Minnesota.

March 8, 1985.

Bruce E. Goldstein, St. Paul, for Vacura.

Rolland Roers, Minneapolis, for Borg Warner.

Charles Zierke, Fairmont, for Allis-Chalmers.

COYNE, Justice.

Jerald and Karen Vacura and Borg-Warner Acceptance Corporation appeal from an order of the Jackson County District Court awarding Allis-Chalmers Credit Corporation summary judgment in the amount of $66,017.35 against the Vacuras and from an earlier order summarily declaring that Allis-Chalmers holds a security interest, superior to the interest of any other party, in a farm tractor and disc. We reverse and remand.

Haar's Equipment, Inc., was the Allis-Chalmers dealer in Jackson, Minnesota. Allis-Chalmers Manufacturing Company supplied to Haar's its equipment and parts inventory pursuant to a floor plan; Allis-Chalmers Credit Corporation financed Haar's retail installment sales; and Allis-Chalmers Distribution Service Corporation owned 200 shares of Haar's preferred stock and held irrevocable voting proxies for all other outstanding shares, both common and preferred. An Allis-Chalmers employee was a director of Haar's.

In November of 1978 Jerald Vacura, a Lakefield farmer, told Jim Pohlman, a Haar's salesman, that he wished to enter into a lease of an Allis-Chalmers tractor and other farm implements. They agreed that Vacura could have possession of the model 8550 tractor and a disc while Pohlman attempted to find a lessor—someone who would buy the equipment and lease it to Vacura. When, however, Allis-Chalmers discovered the tractor and disc were not at the dealership, as required by the floor

plan agreement, it insisted that the equipment either be paid for or returned to Haar's. In order to keep the equipment on his farm, Jerald Vacura signed a retail installment contract dated January 2, 1979, in which he agreed to buy and grant Haar's security interest in the tractor and disc. On the face of the contract, in handwriting, Jerald Vacura is identified as the buyer and Haar's Equipment, Inc., is identified as the seller. The name and logo of Allis-Chalmers Credit Corporation is printed in the upper right hand corner of the form and this printed legend appears in a lower corner:

ACCEPTED and assigned to the Holder under assignment number (3) on the reverse side of this contract on _____, 19___.

Although the assignment number has been filled in, the date has not. At the same time Vacura signed a Uniform Commercial Code financing statement in which Haar's is named as the secured party. On January 3, 1979, the handwritten financing statement was filed. In that statement Allis-Chalmers Corporation is identified, in typewritten form, as the assignee of the secured party.

Before a lessor was found, the first payment on the retail installment contract, $14,499, came due. On or about May 2, 1979, Vacura paid Haar's $20,799. Haar's did not transmit that payment to Allis-Chalmers but remitted only $410.84, representing two months' interest, and secured a two-month extension of the due date for the first payment. Allis-Chalmers was aware when it granted the extension that Haar's and Vacura were attempting to negotiate a lease agreement and that the equipment was to be paid for when the lease was arranged.

When Pohlman's attempts to arrange a lease proved unsuccessful, he enlisted the services of Harry Marks, an independent lease broker, who arranged a lease from Borg-Warner. Borg-Warner was to purchase the farm equipment from Haar's and to lease it to the Vacuras for a term of seven years. The parties executed the lease for the tractor, disc, and other equipment and a U.C.C. financing statement in which the Vacuras were named as lessees and Borg-Warner was designated as lessor. To secure their performance of the lease, Jerald and Karen Vacura also executed a second mortgage on a parcel of real estate.

On September 26, 1979, Borg-Warner's branch manager, Hugh Schultz, delivered a $120,000 check to Haar's in payment of the total cash purchase price for the tractor and disc and three other pieces of equipment also listed on Haar's dealer's retail purchase order and included in the lease between Borg-Warner and the Vacuras. At the dealership Schultz was introduced to two Allis-Chalmers employees who said they had been waiting for Schultz and asked what had taken so long. Although he did not otherwise discuss the transaction with them, Schultz believed the Allis-Chalmers representatives had been waiting for the funds he was delivering. On receipt of the Borg-Warner check Haar's did not remit the balance due Allis-Chalmers as assignee of the retail installment contract but made only a $14,744 payment on the account.

By a letter dated February 12, 1980, Allis-Chalmers instructed Vacura not to make any future payments under the retail installment contract to Haar's and to send payments to Allis-Chalmers. Haar's was in bankruptcy. The Vacuras, who had been paying Borg-Warner pursuant to the lease, instituted this action to determine their rights and the rights of Allis-Chalmers, Borg-Warner, and Haar's in the tractor and disc and to enjoin Allis-Chalmers from foreclosing or repossessing the equipment. Allis-Chalmers asserted a security interest in the equipment and counterclaimed for the unpaid balance of the retail installment contract.

On cross-motions for summary judgment, the district court declared that Allis-Chalmers holds a security interest, superior to the interest of any other party, in the tractor and disc. Subsequently, the trial court ordered summary judgment awarding Allis-Chalmers the sum of $66,017.35,

representing the balance due it under the retail installment contract, against both Jerald and Karen Vacura.

■ Summary judgment may be granted only if, after taking the view of the evidence most favorable to the nonmoving party, the movant has clearly sustained his burden of proving that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Although summary judgment is intended to secure a just, speedy, and inexpensive disposition, it is not intended as a substitute for trial where there are fact issues to be determined. *Sauter v. Sauter*, 244 Minn. 482, 70 N.W.2d 351 (1955). The inquiry of the trial court in its consideration of a motion for summary judgment is whether or not any genuine issues of material fact exist, not how such issues should be resolved. *Hinrichs v. Farmers Cooperative Grain & Seed Association*, 333 N.W.2d 639, 641 (Minn.1983).

■ A careful scrutiny of the record before us, including the affidavits, depositions and exhibits contained in the file, leads us to the conclusion that the trial court erred in granting summary judgment. We have frequently held that the existence of an agency relationship is a question of fact. *White v. Boucher*, 322 N.W.2d 560, 566 (Minn.1982); *PMH Properties v. Nichols*, 263 N.W.2d 799, 802 (Minn.1978). And we have held that the existence of an agency relationship may be proved by circumstantial evidence of a course of dealing between the two parties. *A. Gay Jenson Farms Co. v. Cargill, Inc.*, 309 N.W.2d 285, 290 (Minn.1981). On this record we cannot hold that, as a matter of law, the plaintiff's assertion that Haar's was Allis-Chalmer's agent is baseless.

■ That Allis-Chalmers owned preferred shares of Haar's, held voting proxies of all outstanding shares, and placed its employee on Haar's board of directors does not, absent some evidence that Allis-Chalmers assumed control over Haar's, permit a finding that Haar's conducted the retail farm equipment business as the agent of Allis-Chalmers. There is evidence, however, from which a jury could infer that Haar's had authority—either actual or apparent—to accept payment on behalf of Allis-Chalmers. Some Haar's customers who bought equipment on installment contracts assigned to Allis-Chalmers paid Allis-Chalmers directly; some elected to pay Haar's, which then remitted the payment to Allis-Chalmers. Customers who made payments to Haar's were permitted to make the checks payable either to Haar's or to Allis-Chalmers. There is no evidence that Allis-Chalmers ever objected to this practice. While apparent authority is usually based on some affirmative action on the part of the principal, authority may be found when the agent has regularly exercised some power not expressly given to it and the principal, knowing of the practice, tacitly sanctions its continuance. *Ziegler v. Denver Hog Serum Co.*, 204 Minn. 156, 283 N.W. 134 (1938); *Dobbs v. Zink*, 290 Pa. 243, 138 Atl. 758 (1927). *See generally*, H. Reuschlein and W. Gregory, Handbook on the Law of Agency and Partnership, § 15 at p. 41 (1979).

■ Moreover, Minn.Stat. § 336.9–318(3) (1984), provides that "[t]he account debtor is authorized to pay the assignor until the account debtor receives notification that the amount due or to become due has been assigned and that payment is to be made to the assignee." The specification of the content of the notice is in the conjunctive: notification of an assignment will not cut off the account debtor's rights to pay his original creditor unless it contains an explicit direction that payment is to be made to the assignee. *First National Bank v. Board of Education, School Dist. No. 189*, 68 Ill.App.3d 21, 24 Ill.Dec. 670, 385 N.E.2d 811 (1979); *First National Bank v. Mountain States Telephone and Telegraph Co.*, 91 N.M. 126, 571 P.2d 118 (1977). *See also Estate of Haas v. Metro-Goldwyn-Mayer, Inc.*, 617 F.2d 1136 (5th Cir.1980). 1 Gilmore, Security Interests in Personal Property, § 12.8 at 393 (1965). Vacura contends that although he was aware that Allis-Chalmers had some interest in the tractor and disc in January of 1979, the

letter of February 12, 1980, was the first notice that future payments were not to be made to Haar's but were to be made directly to Allis-Chalmers. If it should be found as fact that Vacura was not instructed that payment was to be made to Allis-Chalmers, not to Haar's, until after payment in full had been delivered to Haar's on September 28, 1979, payment to Haar's was authorized pursuant to Minn.Stat. § 336.9–318(3) (1984).

In addition, whether or not Allis-Chalmers authorized the sale of the tractor and disc to Borg-Warner is a genuine issue of material fact. Minn.Stat. § 336.9–306(2) (1984) limits the continuance of a security interest under certain conditions:

A security interest continues in collateral notwithstanding sale, exchange, or other disposition thereof [by the debtor] unless the disposition was authorized by the secured party in the security agreement or otherwise * * *.

Accordingly, if the secured party has given his consent or authorization, the collateral when sold or otherwise transferred is free of the claims of the secured party although the interest of the secured party continues in any identifiable proceeds of the sale, including proceeds in the hands of the debtor. 4 Anderson, Uniform Commercial Code, § 9–306:4 at 302 (1971). That the secured party authorized the sale may be inferred from the circumstances, general language, and conduct of the parties. *Poteau State Bank v. Denwalt*, 597 P.2d 756, 760 (Okla.1979). When the creditor consents to the sale of the collateral, the sale destroys his security interest in the collateral even though the consent was conditioned on the debtor remitting the proceeds of the sale to the creditor and the proceeds were never remitted. *First National Bank & Trust Company v. Iowa Beef Processors, Inc.*, 626 F.2d 764, 769 (10th Cir. 1980); *Southwest Washington Production Credit Association v. Seattle First National Bank*, 19 Wash.App. 397, 577 P.2d 589 (1978).

When the evidence is viewed in the light most favorable to the appellants, it cannot be said that a factfinder could not reasonably conclude that Haar's sale of the tractor and disc to Borg-Warner took place with Allis-Chalmers' knowledge and tacit consent. Allis-Chalmers knew that Haar's was attempting to find a buyer who would lease the equipment to Vacura and that Haar's rather than Vacura would sell the equipment to the lessor. When Allis-Chalmers learned that a lease broker was negotiating a lease with Borg-Warner as the lessor, an Allis-Chalmers representative told the broker that it had a lien on the equipment and that it wanted the obligation paid off.

Inasmuch as we remand the case for trial, it is necessary to put to rest other issues raised in this appeal. Vacura contends that he was induced to sign the installment contract and financing statement as a temporary measure which would be rescinded when a lease was executed and that he did not intend to give a security interest in the tractor and disc. Haar's agrees that the installment contract was a stopgap measure, but the fact that the parties may have intended to later substitute a different agreement does not affect the validity of the security interest created by their interim arrangement. Although it is recognized in Minn.Stat. § 336.9–102 that a valid security interest arises when the parties intend to create such an interest, it is not the subjective intent of a party but his manifest intent which is determinative. *In re Keydata Corp.*, 18 B.R. 907, 33 U.C. C.Rep.Serv. 1075, 1078 (Bankr.D.Mass. 1982). Here Jerald Vacura signed a retail installment contract and U.C.C. financing statement. Both instruments clearly stated that he granted Haar's a security interest in the equipment. The trial court correctly ruled that a valid security interest had been created.

The trial court also properly ruled that Borg-Warner did not take the tractor and disc free of Allis-Chalmers' interest pursuant to Minn.Stat. § 336.9–307(1) (1984), which carves out an exception for inventory subject to a floor plan: "A

buyer in ordinary course of business[1] * * * takes free of a security interest *created by his seller* even though the security interest is perfected and even though the buyer knows of its existence." (Emphasis supplied.) Although Borg-Warner bought the tractor and disc in the ordinary course of business, the security interest was created by Vacura—not by Haar's, Borg-Warner's seller. Haar's was a party to the transaction in which the security interest was created, but, as the recipient of the security interest granted by Vacura, Haar's cannot be said to have brought about or produced the security interest. The "security interest created by his seller" as used in Minn. Stat. § 336.9–307(1) (1984), refers only to a security interest given by the seller as debtor and does not include any other security interest even though it was created in an agreement to which the seller was a non-debtor party. *Ocean County National Bank v. Palmer*, 188 N.J.Super. 509, 457 A.2d 1225 (1983); *In re Woods*, 35 U.C.C. Rep.Serv. 256 (Bankr.E.D.Tenn.1982).

 Finally, after a judge has removed himself from a case, he may not issue an order which relates to the merits. *Minnesota State Bar Assn. v. Divorce Education Association*, 300 Minn. 323, 219 N.W.2d 920, *cert. denied*, 419 U.S. 1023, 95 S.Ct. 500, 42 L.Ed.2d 297 (1974). The order for judgment in the amount of $66,017.35 plus costs, disbursements and attorneys' fees should not have been issued after the judge had agreed to remove himself even though Allis-Chalmers had moved for such relief before the plaintiffs requested the judge to remove himself. In any event, a money judgment should not have been ordered against Karen Vacura, who was not a party to the retail installment contract. That she was a party plaintiff represented by the same lawyer as Jerald Vacura and that the plaintiffs took the same position

on the issues did not subject Karen Vacura to liability for her husband's debt.

Reversed and remanded for trial.

---

**1.** A buyer in the ordinary course of business is a person who in good faith and without knowledge that the sale to him is in violation of ownership rights or security interest of third party in goods, buys in the ordinary course from a person in the business of selling goods of that kind. Minn.Stat. § 336.1–201(9) (1984).