**FIRST NATIONAL BANK OF LeCENTER, Respondent,**

v.

**FARMERS UNION MARKETING AND PROCESSING ASSOCIATION, Appellant.**

No. C2–85–214.

Court of Appeals of Minnesota.

July 9, 1985.

Review Denied Sept. 26, 1985.

Donald H. Spartz, LeCenter, for respondent.

James H. Turk, Mankato, for appellant.

Heard, considered, and decided by SEDGWICK, P.J., and WOZNIAK and RANDALL, JJ.

## OPINION

WOZNIAK, Judge.

Respondent First National Bank of LeCenter (First National) sued appellant Farmers Union Marketing and Processing Association (Farmers Union) for conversion of livestock. Farmers Union purchased the livestock, in which the bank had a valid, perfected security interest, from a farmer. Farmers Union alleged that the bank had authorized the farmer to sell the livestock, thereby waiving its security interest pursuant to Minn.Stat. § 336.9–306 (1982). The trial court granted summary judgment in favor of the bank. We affirm.

## FACTS

First National held a valid security interest in all livestock "now owned or hereafter acquired" by Gregory Fredrickson, a farm-

er in the business of raising cattle and sheep to a certain weight for sale. Fredrickson was indebted to the bank for at least $22,976.25. The security agreement, dated November 13, 1979, provided that Fredrickson "will not sell or offer to sell or otherwise transfer the Collateral or the proceeds thereof or any interest therein *without the written consent* of Secured Party." (Emphasis added.) A financing statement was filed with the LeSueur County Recorder's office on November 14, 1979.

On July 15, July 19, and July 26, 1982, Fredrickson sold some of the livestock in question to Farmers Union for total sales of $10,661.19. These sales were made without the written approval of the bank as required by the security agreement. On August 2, 1982, Fredrickson filed for bankruptcy.

The bank sued Farmers Union for conversion. Farmers Union defended by arguing the bank authorized the sale, impliedly authorized by a course of dealing or expressly within the terms of the agreement.

In support of the course of dealing argument, Farmers Union introduced bank employee deposition testimony. The bank officer who handled most of Fredrickson's transactions, Gary Feld, testified that the bank did not strictly enforce the prior written permission policy against its agricultural customers.

In support of the express authorization argument, Farmers Union pointed at a specific clause in the policy as authorization for the sales: "Until default, Debtor may harvest, process, store and use the Collateral in any lawful manner *not inconsistent with this agreement* or with the terms or conditions of any policy of insurance thereon and may also sell farm products in the ordinary course of business." (Emphasis added.)

The trial court rejected both arguments, holding that because the bank had not given prior written consent for the sales, it could rely on its security interest continuing in the livestock in the hands of Farmers Union.

## ISSUES

1. Did the trial court err in determining that the bank did not authorize Fredrickson's sale of livestock to Farmers Union?

2. Is whether or not the bank authorized the sale a genuine issue of material fact which should have been decided by a jury?

3. Should the bank be denied recovery on an otherwise valid claim on the basis of the doctrine of avoidable consequences?

4. Should Farmers Union, as a bailee, escape liability?

## ANALYSIS

### I.

Under Minn.Stat. § 336.9–306(2) (1982), a security interest continues in collateral after sale unless the secured party authorizes the sale. Minn.Stat. § 336.9–306(2) provides:

> Except where this article [article 9 of the U.C.C.] otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement *or otherwise,* and also continues in any identifiable proceeds including collections received by the debtor.

(Emphasis added.)

Although buyers in the ordinary course of business take goods free of perfected security interests created by sellers, "a person buying farm products from a person engaged in farming operations" is specifically excepted. Minn.Stat. § 336.9–307(1) (1982).

It is undisputed that Farmers Union was buying a farm product from a person engaged in farming operations and that the bank did not give prior written consent for the sale. Therefore, without more, under the parties' agreement and article 9, the bank's security interest in the livestock would continue despite the sale to Farmers Union.

Farmers Union argues that the bank authorized the sale even though it did not give prior written consent. The argument is twofold: (1) the bank's past failure to object to customers selling secured collateral without written permission operates as a waiver of the bank's right to do so now (the course of dealing argument); and (2) the bank expressly authorized Fredrickson to sell his livestock. The trial court rejected Farmers Union's arguments relying on *Wabasso State Bank v. Caldwell Packing Co.,* 251 N.W.2d 321 (Minn.1976).

In *Wabasso,* the supreme court considered whether evidence of a course of dealing could countermand specific terms in a written security agreement. There the bank had loaned a farmer funds to purchase feeder cattle and had taken a security interest in the cattle under an agreement that prohibited sale of the collateral without the bank's express prior written consent. The farmer sold the cattle to two meat packers without obtaining consent, and the bank sued the packers for conversion. The court rejected the argument that the bank authorized sales, relying on Minn. Stat. § 336.1–205(4), which provides that a course of dealing may be used to interpret terms of an agreement but not to contradict them. *Wabasso,* 251 N.W.2d at 325.

We recently reaffirmed the *Wabasso* rule. On similar facts, this court ruled that a security agreement expressly requiring prior written authorization to sell collateral is not defeated by evidence of the bank's past failure to object to unauthorized sale of secured grain. *See Swift County Bank v. United Farmers Elevators,* 366 N.W.2d 606 (Minn.Ct.App.1985).

There can be no question that *Wabasso* and *Swift* defeat Farmers Union's argument that the bank's practice of allowing customers to make unauthorized sales of secured livestock operates as a waiver of the bank's right to insist on strict adherence to the present agreement.

■ In support of the express authorization argument, Farmers Union points to the default clause: "Until default, Debtor may harvest, process, store and use the Collateral in any lawful manner *not inconsistent with this agreement* or with the terms or conditions of any policy of insurance thereon and may also sell farm products in the ordinary course of business." (Emphasis added.) Farmers Union also relies on the testimony of bank officials for support.

The default clause is certainly not an express authorization. It allows the debtor to sell the collateral in any manner not inconsistent with the agreement, i.e., prior consent is required.

■ The testimony simply reveals that the bank officials were aware that Fredrickson was selling his livestock. Whether or not the bank officials were aware of Fredrickson's sales is of no consequence to the outcome of this case. Of course, the bank knew that Fredrickson would be selling the collateral. Fredrickson was in the business of selling livestock, just as the farmer in *Wabasso* was, and just as the farmer in *Swift* was in the business of selling grain. In all three cases, the banks knew that the farmers would be periodically selling the collateral, but that knowledge does not defeat the security interest. This argument is really no different than the course of dealing argument. Both are without merit in light of *Wabasso* and *Swift.*

■ Farmers Union cites many cases from many jurisdictions in support of its position. These cases are nothing more than indicia of the way courts have split on the issue of whether a secured party can waive its security interest by its course of dealing. The rule in Minnesota is clear. A security agreement expressly requiring prior written authorization to sell collateral cannot be defeated by evidence of a bank's past failure to object to unauthorized sales. *Wabasso; Swift;* Minn.Stat. § 336.9–205 (1982).

## II.

Farmers Union argues that a recent supreme court case makes clear that the trial court erred in not submitting to the jury

the question of whether the bank authorized the sale of the livestock.

In *Vacura v. Haar's Equipment,* 364 N.W.2d 387 (Minn.1985), the supreme court reversed the trial court because it did not submit a similar question to the jury:

> [W]hether or not Allis-Chalmers authorized the sale of the tractor and disc to Borg-Warner is a genuine issue of material fact. * * * That the secured party authorized the sale [of collateral] may be inferred from the circumstances, general language, and conduct of the parties.

*Id.* at 392. In *Vacura,* however, the security agreement contained no requirement that the farmer seek written permission from the bank before selling. Therefore, in that case, whether or not the secured party had given its authorization was indeed a question of fact. *Vacura* is simply not applicable to our facts.

### III.

Farmers Union argues that the bank is not entitled to damages, even if conversion is established, because it failed to mitigate its damages and violated the equitable rule of avoidable consequences.

Under the theory of avoidable consequences, a plaintiff with an otherwise valid claim is denied recovery because he failed to mitigate the consequences of a known wrong. *See Bemidji Sales Barn, Inc. v. Chatfield,* 250 N.W.2d 185, 189 (Minn.1977). Farmers Union's argument is that the bank cannot recover because it ignored signs that Fredrickson would not be able to pay, and continued to sit back and allow him to sell to Farmers Union. This argument is without merit.

Here the bank was not aware of the sales until they were completed, until after the fact. By that time, there were no consequences to be avoided.

### IV.

Farmers Union argues that because it is a bailee, Minn.Stat. § 336.7–404 (1982) protects it from liability for its conversion

of the livestock. Section 336.7–404 provides:

> A bailee who in good faith including *observance of reasonable commercial standards* has received goods and delivered or otherwise disposed of them according to the terms of the document of title or pursuant to this article is not liable therefor.

(Emphasis added.)

We are of the opinion that Farmers Union could not be considered a bailee for purposes of this statute. That question aside, however, it is clear that Farmers Union did not observe reasonable standards by their failure to make a phone call in order to ascertain whether or not there was a perfected security interest in the livestock in question. Therefore, Farmers Union does not fall within the protective purview of Minn.Stat. § 336.7–404.

### DECISION

The First National Bank of LeCenter had a perfected security interest in the livestock sold by Fredrickson to Farmers Union which was not waived by prior conduct.

The trial court properly granted summary judgment to First National.

Neither the doctrine of avoidable consequences nor Minn.Stat. § 336.7–404 is applicable to this case.

Affirmed.