**In re HANSON RESTAURANTS, INC., Debtor.**

**Michael S. DIETZ, Trustee for the Bankruptcy Estate of Hanson Restaurants, Inc., Plaintiff,**

v.

**Daniel L. HANSON and Stanley Hanson, Defendants.**

Bankruptcy No. 3–92–2662.
Adv. No. 3–92–184.

United States Bankruptcy Court,
D. Minnesota,
Third Division.

June 22, 1993.

Dan Moulton, Rochester, MN, for debtors.

Michael S. Dietz, Rochester, MN, as Trustee for the Bankruptcy Estate of Hanson Restaurants, Inc.

### ORDER

DENNIS D. O'BRIEN, Bankruptcy Judge.

This matter came before the Court on trial to determine whether the Trustee can avoid preferential transfers from the Debtor's insider/guarantors. Michael Dietz appears as Chapter 7 Trustee. Dan Moulton appears on behalf of the Defendants. Based upon the files, records, evidence and testimony presented at trial, and arguments of counsel, the Court makes this Order pursuant to the Rules of Bankruptcy Procedure.

### I.

The Defendants were guarantors of certain pre-petition obligations of the Debtor to First State Bank of Wabasha. Defendant Daniel Hanson, principal of the Debtor, caused the Debtor to transfer pre-petition, to the Bank, all real and personal property of the Debtor toward satisfaction of the guaranteed debt. In return, the Bank released the guarantors from further

liability. The Trustee brings this action to avoid the transfer under 11 U.S.C. § 547(b).

On November 7, 1990, Hanson Restaurants, Inc., purchased all real and personal property of the business known as Wabasha Resort from Ronald and Judith Krueger. The purchase price included the assumption of an existing note and first mortgage in favor of First State Bank of Wabasha in the amount of $203,000, and, a note and second mortgage to the Kruegers in the amount of $64,000. The Bank was aware of the transaction, consented to it, and subsequently accepted payments on its note from the Debtor. Neither the Bank, Kruegers nor the Debtor filed a financing statement on the personal property under the Debtor's name, but the originally filed UCC–1 financing statement covering the Bank's collateral and listing the Kruegers, d/b/a The Wabasha Resort remained on file. On November 9, 1990, Daniel L. Hanson executed a Guaranty in the amount of $200,000, in favor of the Bank, guaranteeing the assumed debt. On September 9, 1991, Stanley Hanson executed a similar Guaranty, but limited to $25,000. The note in the amount of $64,000.00 in favor of the Kruegers was not guaranteed by the Defendants.

The Debtor subsequently became delinquent under the terms of the note and, on February 11, 1992, the Bank brought a replevin action in state court to obtain possession of the resort's personal property. At the replevin hearing, the state court ruled that the Bank was entitled to the property, and requested that the Bank's attorney submit a written order for his signature. The order was never submitted to the Judge because the parties otherwise resolved the matter.

On February 25, 1992, the Debtor, Stanley Hanson and Daniel Hanson, and the Kruegers,[1] entered into an agreement with the Bank to transfer all personal and real property of the Wabasha Resort to the Bank. The Debtor, through Daniel Hanson, and the Kruegers, executed quit claim

---

**1.** Although the Debtor had assumed the Krueger note and mortgage, the Bank had not released

the Kruegers from liability.

deeds in favor of the Bank.[2] In exchange, the Bank released the Hansons and the Kruegers from all liability for any deficiency owing on the note.

Total value of the property transferred was $215,000, of which $190,000 was attributable to the real property and $25,000 to the personal property. The Bank was owed approximately $242,000. The value of the released deficiency was $27,000. At the time of the transfer, the Debtor owed the Kruegers $56,000 on the second mortgage.

The Debtor's petition for relief under Chapter 7 was filed on May 5, 1992. The Trustee argues that the pre-petition transfers of the real and personal property to the Bank were preferential to the guarantors in the amount of $27,000, the value of the released deficiency. Additionally, the Trustee seeks recovery for the Krueger's $65,000 second mortgage debt.[3]

## II.

### A. In General.

■ 11 U.S.C. § 547(b) provides:

Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the filing of the petition; or

(B) between ninety days and one year before the date of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

Guarantors are contingent creditors, and transfers made by a debtor for their benefit can be avoidable under the statute. *See: Levit v. Ingersoll Rand Fin. Corp.,* 874 F.2d 1186, 1199–1200 (7th Cir.1989).

■ A transfer of collateral to an unperfected creditor in satisfaction of an antecedent debt can be a preference because it diminishes the estate by allowing the transferee to receive more from the estate of an insolvent debtor than would be received if the transfer had not been made and the case was a case under Chapter 7 at the time of the transfer.[4] However, a transfer of its collateral to an undersecured, perfected, first priority creditor toward satisfaction of its debt, cannot be a preferential transfer to either the obligee or its guarantor. *See: Miller v. Rausch–Alan (In re Gamest),* 129 B.R. 179, 181 (Bankr.D.Minn.1991); and, *Travelers Ins. Co. v. Cambridge Meridian Group, (In re Erin Food Serv.),* 980 F.2d 792, 801 (1st Cir.1992). This is so, even where the undersecured creditor transferee waives the deficiency as to the guarantor. The gratuitous waiver of a guarantee does not diminish the estate.

### B. The Transfer For Benefit of Defendants as Guarantors of Bank Debt.

*The Real Estate.* The Bank had a perfected first mortgage on the real property and was undersecured on the underlying

---

**2.** The deed was obtained from the Kruegers to clear the record of their second mortgage.

**3.** Apparently, the Trustee includes the $56,000 owed by the Debtor to the Kruegers as part of the total deficiency that the Defendants would have been liable for, absent the transaction, based on an "alter ego" theory. Neither the theory nor the Trustee's explanation of how it relates to the § 547 action, is clear.

**4.** Where the security interest or lien is unperfected, it is avoidable by a trustee under 11 U.S.C. § 544. Consequently, payment to an unperfected secured creditor during the preference period is the same as payment to an unsecured creditor for purposes of § 547 analysis.

obligation. Accordingly, transfer of the real property was not preferential to the Bank; nor could it be preferential to the Defendants, as the Bank's guarantor. *See: Gamest,* at 181.

■ *The Personal Property.* The Trustee argues that the Bank's perfected security interest in the personal property was extinguished when the property was transferred to the Debtor from the Kruegers and, therefore, subsequent transfer of the collateral by the Debtor to the Bank was preferential to the Bank and Defendant guarantors. The Trustee relies on Minn. Stat. § 336.9–306, which provides in pertinent part:

(2) Except where this article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds ...

The Trustee claims that the Bank, by consenting to the transfer of its collateral from the Kruegers to the Debtor, authorized the disposition of the property within the meaning of the statute, resulting in termination of the Bank's security interest.

However, it has been held that:

[A] secured party's consent to the sale of secured property is not coextensive in scope with a transfer free of a security interest ... To determine whether a disposition is "authorized" under section 9–306(2), a court must look to the entire agreement between the secured party and the debtor. And if the secured party and the debtor agree that the debtor can sell the secured property but the secured party will retain his security interest in the sold property, then the entirety of that agreement must be given effect, and the disposition is not "authorized" under section 9–306(2).

*Wegner v. Grunewaldt,* 821 F.2d 1317, 1321 (8th Cir.1987).

The Trustee cites *Citizens Nat'l Bank of Madelia v. Mankato Implement,* 441 N.W.2d 483 (Minn.1989) as strictly interpreting the statute and holding that con-

sent to a transfer of collateral alone satisfies the authorization of disposition provision of Minn.Stat. § 3–906(2). A careful reading of the case and review of Minnesota law, however, reveals that *Wegner* is consistent with Minnesota law addressing the statute.

The collateral involved in *Citizens National* were goods held by the debtor for sale to the public in the ordinary course of the debtor's business. Under those circumstances, consent to the sale in the ordinary course is synonymous with authorization to distribute within the meaning of Minn.Stat. § 336.9–306(2). A buyer in the ordinary course takes free and clear of any security interest in goods created by the seller, whether or not the buyer is aware of the interest. *See:* Minn.Stat. 336.9–307(1).

In an earlier case, the Minnesota Supreme Court, in addressing the statute, held that:

[Whether] the secured party authorized the sale may be inferred from the circumstances, general language, and conduct of the parties.

*Vacura v. Haar's Equip.,* 364 N.W.2d 387, 392 (Minn.1985).

While *Vacura* also focused on consent to sale as authorization under Minn.Stat. 336.9–306(2), again, the collateral were goods held by the debtor for sale to the public in the ordinary course.

The collateral in *Wegner,* like the collateral here, was not property held by the debtor for sale in the ordinary course. In *Wegner* the property was a liquor license. In this case the collateral was property used in connection with the operation of a resort. A secured creditor's consent to the sale of its collateral, where the property is not property held for sale in the ordinary course, is not necessarily "authorization" to dispose of the collateral under Minn. Stat. 336.9–306(2). In this case, when considered in light of: the security agreement; the nature of the collateral; relationship of the parties; and, their course of dealing, the Bank's consent to the sale is not persuasive evidence of "authorization" under the statute.

The security agreement did not authorize a disposition of the collateral free and clear of the Bank's interest. The Bank did not explicitly authorize such a disposition. The transaction was not the type where such an authorization would ordinarily be expected. Contrary, the nature of the collateral, circumstances of the transaction, relationship and conduct of the parties, together create the inference that the Bank did not authorize (and the parties did not intend) disposition free and clear of the bank's interest under Minn.Stat. § 336.9–306(2).

Accordingly, the Bank's security interest in the personal property transferred to it by the Debtor on February 25, 1992, had not been terminated earlier under Minn. Stat. § 336.9–306(2), as a result of sale of the collateral to the Debtor with the Bank's consent. The Bank, therefore, had a continuing, perfected security interest in the personal property transferred to it by the Debtor in satisfaction of the Bank's debt. Again, the Bank was undersecured. The transfer was not preferential to either the Bank or the Defendants, as neither received from the estate more than the value of the Bank's collateral.

### C. The Trustee's Claim on the Krueger Debt.

The Defendants did not guarantee the Debtor's obligation to the Kruegers. Accordingly, they were not guarantors or contingent creditors of the Debtor regarding that debt. The Trustee argues at length that the Defendants were the "alter ego" of the Debtor. But he does not explain how, assuming the assertion to be true, it relates to this § 547 proceeding. A basic element of a § 547 action is that the transfer at issue be made to or for the benefit of a creditor. *See:* 11 U.S.C. § 547(b)(1). One who is the "alter ego" of a debtor is not a creditor of the debtor, since one is not a creditor of oneself. Accordingly, acceptance of the Trustee's "alter ego" theory would deprive him of his entire § 547 claim.

The Trustee has offered no explanation of how the Debtor's transfer to the Bank satisfies § 547(b)(1), or any other element of the statute, as to the Krueger's second mortgage. No preferential transfer has been shown.

### III.

Based on the foregoing, **IT IS HEREBY ORDERED:**

The Defendants are entitled to judgment that the transfer of the Wabasha Resort real and personal property by the Debtor to the State Bank of Wabasha on or about February 25, 1992, was not a preferential transfer under 11 U.S.C. § 547(b) as to the Defendants.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**