**CITIZENS NATIONAL BANK OF MADELIA, Appellant,**

v.

**MANKATO IMPLEMENT, INC., Respondent.**

No. C9–87–2322.

Court of Appeals of Minnesota.

Aug. 9, 1988.

Review Granted Oct. 19, 1988.

James H. Turk, Blethen, Gage & Krause, Mankato, for appellant.

John C. Hottinger, Hottinger Law Offices, Mankato, for respondent.

Heard, considered and decided by FORSBERG, P.J., and LANSING and SCHULTZ, JJ.[*]

## OPINION

LANSING, Judge.

Citizens National Bank of Madelia appeals the trial court's judgment that respondent Mankato Implement, Inc. was not liable for conversion when it disposed of farm equipment it received in three separate trades from the bank's debtor, Harlan Burley. The trial court found that the bank orally consented to Burley's trading the farm equipment which secured Burley's debt to the bank. Therefore, the trial court ruled, Mankato Implement received the equipment free and clear of the bank's lien and was free to dispose of it.

The bank claims the evidence does not support the trial court's finding that it orally consented to the three trades. Additionally, it claims the oral consent, if given, was ineffective because the security agreement between Burley and the bank required that any authorization to dispose of collateral be in writing.

We affirm.

## FACTS

On February 8, 1982, Harlan Burley granted appellant Citizens National Bank of Madelia a security interest in all of his farm equipment then owned or thereafter acquired. The security agreement provided that:

[*] Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

Debtor will not sell or otherwise dispose of the collateral or any interest therein without the prior written consent of secured party.

The bank promptly perfected its security interest by filing a UCC–1 financing statement with the Blue Earth County Recorder.

At the time of the security agreement, and for more than two years afterward, Burley dealt directly with the bank's president, Howard Roe. During this period, Burley entered into three separate transactions with Mankato Implement Company in which he traded farm equipment to Mankato Implement and received newer equipment in return.

The bank claims it had no knowledge of these trades until November 1985 when it demanded Mankato Implement return the equipment received from Burley. Mankato Implement could not produce this equipment for the bank because it had all been resold. The bank then brought this conversion claim against Mankato Implement for selling equipment which was allegedly still subject to the bank's security interest.

Conceding that the bank had a perfected security interest in the equipment while it was still in Burley's possession, Mankato Implement introduced evidence to show the bank had orally authorized the trades, allowing Mankato Implement to receive the equipment free and clear of the bank's lien. Burley testified that he spoke with bank president Howard Roe about the details of each of the three trades before each trade occurred. He claimed that Roe understood the details of the trades and consented to them before they occurred. Burley also testified that he informed Roe after each trade was made and that Roe never asked for or expected any cash proceeds from them. Burley admitted on cross-examination, however, that he did not recall the exact dates of his meeting with Roe nor exactly what words Roe used to show his consent.

Burley's testimony was supplemented by that of Mankato Implement's salesperson and its owner who corroborated that each trade was made and that the bank never objected to the trades or asked for any cash proceeds. Mankato Implement's salesperson also testified that he personally met with Roe prior to one of the trades and that Roe understood and consented to the trade.

The trial court found that Roe, acting on behalf of the bank, consented to and authorized Burley to trade his equipment to Mankato Implement. It concluded that the bank's security interest did not continue in the equipment in the hands of Mankato Implement and that the bank therefore had no claim for conversion. *See* Minn.Stat. § 336.9–306(2) (1986). The trial court also found that John Deere Company had a perfected purchase money lien in one item of equipment and that, as to that item, the bank had no conversion claim even if it had not consented to Burley's trading it. The bank's motion for an amended judgment was denied and this appeal followed.

## ISSUES

1. Does the evidence support the trial court's finding that the bank, through its officer, orally consented to its debtor's trading equipment to Mankato Implement?

2. Was the bank's oral consent to its debtor's trading equipment effective despite the security agreement's requirement that the debtor obtain written consent before disposing of any collateral?

## ANALYSIS

Findings of fact made by the trial court sitting without a jury will not be set aside unless they are clearly erroneous, with due regard for the opportunity of the trial court to judge the credibility of the witnesses. Minn.R.Civ.P. 52.01. * * * [The findings will not be upset unless they are] manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole.

*Tonka Tours, Inc. v. Chadima*, 372 N.W. 2d 723, 726 (Minn.1985) (citations omitted). Although the evidence of consent was presented in a piecemeal fashion and is general rather than specific, it is sufficient,

when considered as a whole, to support the trial court's findings. *See id.*

The more complex issue is whether the bank's oral consent was effective in view of the security agreement's express requirement that any consent to disposition of the collateral be in writing. Minn.Stat. § 336.9–306(2) (1986) provides:

> Except where this article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement *or otherwise,* and also continues in any identifiable proceeds including collections received by the debtor.

(Emphasis supplied.) Because the bank did not authorize disposition of the collateral in the written agreement, there must be some showing that it "otherwise" authorized the disposition. *See id.* The bank argues that the only way it could have "otherwise" authorized the disposition was by written consent as explicitly stated in the security agreement.

 The bank relies primarily on *Wabasso State Bank v. Caldwell Packing Co.,* 308 Minn. 349, 251 N.W.2d 321 (1976), in which the court ruled that a secured creditor's failure to object to previous sales of collateral, and its receipt of proceeds from those sales, did *not* constitute consent to future disposition of the collateral when the security agreement required written consent. The court stated that the secured creditor's acquiescence to the previous sales established merely a course of dealing between the secured creditor and the debtor. Relying on Minn.Stat. § 336.1–205(4), which provides that express terms of an agreement control course of dealing, the court ruled that the express term requiring written consent must prevail over the parties' course of dealing. *Id.*

at 356, 251 N.W.2d at 325. This court has in three instances followed *Wabasso* when a secured party acquiesced to prior dispositions of collateral by accepting the proceeds without making a formal objection. *See Erlandson Implement, Inc. v. First State Bank of Brownsdale,* 400 N.W.2d 421 (Minn.Ct.App.1987); *First Nat'l. Bank of LeCenter v. Farmers Union Marketing and Processing Ass'n.,* 371 N.W.2d 22 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. Sept. 26, 1985); *Swift County Bank v. United Farmers Elevators,* 366 N.W.2d 606 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. June 24, 1985).

We conclude, however, that because *Wabasso* is distinguishable in two important respects it does not control this case.[1] First, the secured creditor in *Wabasso* manifested at best a tacit consent to a completed transaction by accepting proceeds without objection. In the present case the trial court found the bank president expressly gave the debtor his consent to dispose of the collateral in a particular manner.

Secondly, the alleged consent in *Wabasso* was based solely on the parties' actions surrounding previous dispositions of collateral. The buyer in *Wabasso* claimed that because the secured creditor had arguably consented to previous dispositions (by its failure to object) it should be deemed to have consented to all future dispositions. In the present case the bank's consent accompanied each disposition as it occurred, and in fact was given both before and after each disposition.

Thus, the consent in this case is based on far more than a course of dealing between the debtor and the bank. A course of dealing is "a sequence of previous conduct between the parties to a particular transaction." Minn.Stat. § 336.1–205(1). Here we have specific actions and statements ad-

---

1. We also note that the Nebraska case heavily relied upon by the *Wabasso* court, *Garden City P.C.A. v. Lannan,* 186 Neb. 668, 186 N.W.2d 99 (1971), has since been overruled. *See Farmers State Bank v. Farmland Foods, Inc.,* 225 Neb. 1, 10, 402 N.W.2d 277, 282 (1987). The *Farmland Foods* court explained that "course of dealing" refers to conduct prior to the execution of the security agreement and should not be used to characterize post-agreement conduct (such as that relating to disposition of collateral). *Id.* at 7–9, 402 N.W.2d at 281–82. *See also* 21A Minn. Stat.Ann. § 336.1–205, Minnesota Code Comment at 102 (West 1966) ("This subsection (1) restricts 'course of dealing' to a sequence of *previous* conduct between the parties.") (emphasis in original).

dressing each separate disposition of the collateral. Consequently, Minn.Stat. § 336.1–205(4), relied upon by the *Wabasso* court, does not apply.

The question remains whether the bank's actions, which evidenced more than simply a course of dealing, operated to waive the requirement that consent to disposition of collateral be in writing. To answer this question we look to common law contract principles which supplement the Uniform Commercial Code to the extent they are not displaced by the Code. *See* Minn.Stat. § 336.1–103 (1986).

A waiver in contract law is "an intentional relinquishment of a known right, and it must 'clearly be made to appear from the facts disclosed.'" *Hauenstein & Bermeister, Inc. v. Met–Fab Industries, Inc.*, 320 N.W.2d 886, 892 (Minn.1982) (emphasis omitted) (quoting *Kennedy v. Hasse*, 262 Minn. 155, 159, 114 N.W.2d 82, 85 (1962)). We conclude the bank's intent to waive its right to require written consent clearly appears from the facts.

The bank was informed of each disposition before it occurred, consented to each and did not object after being told it had been completed. In addition, it did not insist that the debtor obtain written authorization for each disposition nor did it ever require the debtor turn over any cash proceeds. It would be unreasonable to conclude the bank intended to retain its right to insist on written approval of each disposition after it manifested in nearly every way its intent to waive that right.

Because we conclude the bank effectively consented to Burley's trading the equipment we do not decide whether John Deere Company had a perfected purchase money lien in a portion of the equipment.

### DECISION

Affirmed.