CITIZENS NATIONAL BANK OF
MADELIA, Petitioner, Appellant,

v.

MANKATO IMPLEMENT,
INC., Respondent.

No. C9–87–2322.

Supreme Court of Minnesota.

June 9, 1989.

**484**

James H. Turk, Blethen, Gage & Krause, Mankato, for appellant.

John C. Hottinger, Hottinger Law Offices, Mankato, for respondent.

## OPINION

YETKA, Justice.

Appellant, Citizens National Bank of Madelia, appeals from a decision of the Blue Earth County District Court denying its claim for relief in a conversion action brought against respondent, Mankato Implement, Inc. The court of appeals affirmed the decision of the trial court. We also affirm.

On February 8, 1982, Harlan Burley granted the Citizens National Bank of Madelia (hereinafter "the bank") a security interest in all of his farm equipment "now owned or hereafter acquired." A provision of the security agreement provided: "Debtor will not sell or otherwise dispose of the Collateral or any interest therein without prior written consent of Secured Party * * *." The bank immediately perfected its security interest.

Shortly after Burley granted the security interest to the bank, he entered into the first of approximately eight transactions with Mankato Implement. In each of these transactions, Burley would trade his old farm equipment for newer, more efficient farm equipment. In this appeal, the following three pieces of machinery are at issue: 1) a 4650 John Deere tractor which Burley traded in on September 9, 1983; 2) a Wilrich field cultivator traded in on Novem-

ber 22, 1983; and 3) a 4440 John Deere tractor traded in on January 30, 1984.

While the security agreement was in effect and the transactions with Mankato Implement occurred, Burley dealt directly with the bank's president, Howard Roe. Both parties agree that neither Roe nor the bank gave Burley written authorization to trade the equipment, and the bank denied that it gave oral consent. Burley testified, and the trial court found, however, that Roe discussed each trade-in with Burley before it was made and orally approved and encouraged them. Roe retired in 1983, and new officers were installed shortly after the last transaction.

In November of 1985, the bank objected to the transactions and demanded that Mankato Implement return the equipment Burley had traded to them. Mankato Implement was unable to do so because it had already sold the machinery to third parties. On December 23, 1986, the bank brought this conversion action against Mankato Implement. In its answer, Mankato Implement conceded that written authorization had not been given for the trades, but maintained that the bank, through President Roe, had given oral consent, thereby barring its action. In addition, Mankato Implement maintained that John Deere Credit Services had a purchase money security interest in the 4650 tractor.

The district court found that the bank had authorized and consented to the trade-ins and that, under Minn.Stat. § 336.9–306(2) (1988), such oral consent was sufficient to extinguish the bank's security interest in the machinery. The district court also held that John Deere Credit Services had a valid and enforceable purchase money security interest in the 4650 tractor which further barred the bank's claim for that implement.

The court of appeals affirmed the district court, holding that the evidence was sufficient to support the district court's finding that the bank consented to the trade-ins and that such authorization was sufficient to extinguish the bank's security interest in the machinery. *Citizens Nat'l Bank v. Mankato Implement, Inc.*, 427 N.W.2d 23,

26–27 (Minn.App.1988). The court of appeals did not address whether John Deere had a purchase money security interest in the 4650 tractor.

The issues raised on appeal are:

I. Does the evidence support a finding that the bank orally authorized Burley to trade farm equipment to Mankato Implement?

II. Was the bank's oral consent to Burley's trade-in of the collateral effective despite the security agreement's requirement that he obtain written consent before disposing of any collateral?

III. Did John Deere Credit Services have a perfected purchase money security interest in the 4650 tractor?

■ On the first issue, the court of appeals found that, although the evidence of consent was presented in a piecemeal fashion and was general rather than specific, it was sufficient when considered as a whole to support the trial court's finding that oral consent was given. *Id.* at 25–26. The bank argues on appeal that Burley's recollection of the events is too vague to support the trial court's finding and that his testimony should not be believed because he had every reason to be adverse to the bank.

Both of the bank's arguments fail. The record reveals that, while Burley's recollection of the exact date and words of the discussions with Roe is uncertain and perhaps vague, Burley unequivocally stated that he consulted with Roe before each transaction and that Roe consented to and encouraged the trades. Burley's testimony was bolstered by that of James McGraw, part-owner and salesman for Mankato Implement, who testified that he discussed the trade-in of the 4440 tractor with Roe before the transaction took place and that Roe told him that the trade-in would be a good deal for Burley.

As for Burley's hostility towards the bank, possible bias of a witness reflects on his or her credibility, and determining the credibility of witnesses is the sole province of the finder of fact. *Roy Matson Truck Lines, Inc. v. Michelin Tire Corp.*, 277 N.W.2d 361, 362 (Minn.1979).

Furthermore, it is significant, as the trial court noted, that the bank did not offer any evidence to rebut the testimony by Burley or McGraw. The representatives of the bank who dealt with Burley and McGraw were neither deposed nor called as witnesses even though their whereabouts were known, and no claim was made that they were unavailable. The bank's failure to provide rebuttal evidence only increases the extent to which this court must rely on the trial court's assessment of Burley's and McGraw's credibility.

Thus, the evidence sufficiently supported the trial court's finding that the bank consented to the trade-ins.

■ The second issue is whether the bank's oral consent to Burley's trade-in of the collateral was effective despite the requirement in the security agreement that he obtain written consent before disposing of any collateral. The bank contends that, even if it is found to have orally consented to the trade-in, such consent was insufficient to destroy its security interest in the collateral because the security agreement required that all authorization be in writing.

At issue here is the interpretation of Minn.Stat. § 336.9–306(2) (1988), which reads:

Except where this article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor.

*Id.*

The trial court held that the bank's oral consent to the trade-in was sufficient to extinguish the bank's security interest in the machinery because the "or otherwise" language of section 336.9–306(2) expressly permits approval to be given orally despite a contractual agreement that it must be in writing.

In its appeal to the court of appeals and its subsequent appeal to this court, the bank relies primarily on *Wabasso State Bank v. Caldwell Packing Co.*, 308 Minn. 349, 251 N.W.2d 321 (1976). In *Wabasso*, a security agreement between a debtor and the secured party bank provided that the debtor could not dispose of the collateral without obtaining written consent from the bank. As in the present case, the debtor sold the collateral without written consent and the bank sued for conversion. The trial court held that the bank's past practice of not objecting to previous unauthorized sales of collateral constituted its consent by course of dealing to the sale of the collateral in question. *Id.* at 352, 251 N.W.2d at 323.

This court reversed the trial court in *Wabasso* and held that, where a security agreement provides that authorization to dispose of collateral must be in writing, such a term cannot be contradicted merely by evidence of course of dealing. *Id.* at 356, 251 N.W.2d at 325. The court based its decision on Minn.Stat. § 336.1–205(4) (1988), which provides:

> The express terms of an agreement and an applicable course of dealing or usage of trade shall be construed wherever reasonable as consistent with each other; but when such construction is unreasonable *express terms control both course of dealing and usage of trade* and course of dealing controls usage of trade.

*Id.* (emphasis added).

The court of appeals distinguished *Wabasso* from the present case by first noting that, in *Wabasso*, the secured creditor gave, at best, a "tacit consent" to the completed transaction by accepting the proceeds. Here, the bank gave Burley express, albeit oral, consent to dispose of the collateral. Additionally, the alleged consent in *Wabasso* was based on the secured creditor's approval of past transactions while, in the case before us, the bank consented to each transaction before and after it was made. *Citizens Nat'l Bank*, 427 N.W.2d at 26. The court of appeals concluded that the oral consent in the present

case was based on far more than a course of dealing between the parties and, thus, section 336.1–205, relied on in *Wabasso*, does not apply. *Id.* at 26–27.

On appeal to this court, the bank continues to rely on *Wabasso*. It contends that, by allowing "the waiver defense," the court of appeals has adopted an argument that was rejected in *Wabasso*. The bank argues that if a waiver proved by course of dealing cannot defeat a security interest, then it is unreasonable to allow a waiver by oral consent to do so, especially since a course of dealing is usually more susceptible to credible proof.

The bank's attempt to compare the reliability of an oral authorization with a course of dealing indicates that it misunderstands the *Wabasso* decision. In *Wabasso*, the decision not to allow course of dealing between parties to operate as a waiver of an express provision of the security agreement was based entirely on this court's interpretation of section 336.1–205(4) rather than on any considerations of reliability or reasonableness. This is made clear by the following statement from *Wabasso:*

> To the broad rule of Minn.St. 336.9–306(2) that any authority to sell destroys a security interest in the property sold, there is only the exception set forth in Minn.St. 336.1–205(4), that neither course of dealing nor usage of trade can be used to contradict the express terms of an agreement.

*Wabasso*, 308 Minn. at 356, 251 N.W.2d at 325. Clearly, *Wabasso* only prohibits the use of course-of-dealing evidence to contradict written provisions.

Having determined that *Wabasso* is not controlling, we must determine whether the oral authorization was sufficient to extinguish the bank's security interest in the machinery.

The court of appeals applied common law contract principles of waiver to determine if the bank's security interest was extinguished. *Citizens Nat'l Bank*, 427 N.W.2d at 27; *see* Minn.Stat. § 336.1–103 (1988) (unless displaced by a particular provision, common law principles supplement the code). Courts in other jurisdictions have

also found that oral consent operates as a waiver to a security agreement provision requiring that all authorization to dispose of collateral be in writing. *See, e.g., Colorado State Bank v. Hoffner,* 701 P.2d 151 (Colo.App.1985); *Peoples Nat'l Bank and Trust v. Excel Corp.,* 236 Kan. 687, 695 P.2d 444 (1985); *North Central Kansas Prod. Credit Ass'n v. Washington Sales Co., Inc.,* 223 Kan. 689, 577 P.2d 35, 41 (1978).

In order for an action to constitute a waiver, there must be "an intentional relinquishment of a known right, and it must 'clearly be made to appear from the facts disclosed.'" *Hauenstein & Bermeister, Inc. v. Met–Fab Indus., Inc.,* 320 N.W.2d 886, 892 (Minn.1982) (emphasis omitted) (quoting *Kennedy v. Hasse,* 262 Minn. 155, 159, 114 N.W.2d 82, 85 (1962). Relying on the above statement of law, the court of appeals found that the facts clearly evidenced the bank's intent to waive its right to require written consent. *Citizens Nat'l Bank,* 427 N.W.2d at 27. Here, the facts which proved that the bank gave consent to the transactions also prove that the bank waived its right to require written approval of the transactions.

As a final argument, the bank contends that *Wabasso* rejected the idea that a third party may benefit from a waiver of rights between a secured party and a debtor. Again, the bank's reliance on *Wabasso* is misplaced because *Wabasso* appears to hold that a third party may benefit from a waiver of rights between a debtor and a secured party *except* when such waiver is sought to be proven by course-of-dealing evidence. See *Wabasso,* 308 Minn. 356, 251 N.W.2d 325.

In summation, *Wabasso* does not prohibit oral consent from operating as a waiver to a security agreement provision which requires written consent to sell collateral. This court affirms the trial court and court of appeals because the facts show that the bank waived its right to require a written authorization.

■ The third issue raised by this appeal is whether John Deere Credit Services had a perfected purchase money security interest in the 4650 tractor. The court of appeals did not address this question.

To bar further the bank's claim to the machinery, Mankato Implement sought to prove at trial that John Deere Credit Services had a perfected purchase money security interest in the 4650 tractor, thus giving it priority over the bank's lien. *See* Minn.Stat. § 336.9–312(4) (1988). Minn. Stat. § 336.9–302 (1988) generally requires that purchase money security interests be filed and perfected before they will be given priority over previous leins. Mankato Implement was unable to provide documentary proof that its purchase money security interest had been filed because John Deere Co. had destroyed its records in the regular course of business, and the Blue Earth County Recorder's Office had destroyed all UCC–1 filings which were terminated prior to January 1, 1984.

Mankato Implement sought to prove that the security interest had been perfected by showing that these statements were always filed in the normal course of John Deere's business. Based on this evidence, the district court found that John Deere Credit Services had a valid and enforceable purchase money security interest in the 4650 tractor. On appeal, the bank argues that to allow Mankato Implement to prove that John Deere filed the financial statement by merely showing that it regularly filed such documents would bring uncertainty to the Uniform Commercial Code and provide opportunity for abuse.

We do not believe that case law prevents the use of regular business procedures to show that a security interest was filed and thus perfected. This question is really one of sufficiency of the evidence: Did the evidence adduced at trial reasonably support the trial court's finding that the purchase money security interest was filed? *See Tonka Tours Inc. v. Chadima,* 372 N.W.2d 723, 726 (Minn.1985) (findings of fact will not be set aside unless clearly erroneous). We hold that it did.

The trial court relied on the following evidence to find that the purchase money security interest was filed. Larry Larson, the manager of Madelia Implement where

Burley purchased the 4650 tractor, testified that, with each tractor that John Deere financed, he would have to send in several forms, one of which was a UCC–1 form which evidences the security interest. Unless all the forms were sent, the transaction would be rejected. Mel Van Someren, manager of John Deere Credit Services at the time, testified that John Deere Co. would not accept an installment contract without several documents, one of which was the UCC–1 signed by the customer. It was the practice of John Deere, according to Van Someren, to file the UCC–1 the same day it was accepted. He also testified about several safeguards which insured that a contract would not be approved unless such a security agreement was filed.

In addition to the above evidence, the trial court considered the fact that such evidence was destroyed in the regular course of business and that no complaint was registered by plaintiff which would indicate a dispute with the interest when it existed. The bank did not offer any evidence in rebuttal and, on appeal, argues that only actual documentary evidence of filing should have been accepted.

The official recording agency has destroyed its records as well and over 2½ years elapsed before the bank made its claim. Thus, the evidence presented by John Deere was clearly admissible as proof of filing, and the court had sufficient evidence to support its findings.

The trial court and the court of appeals are affirmed.