## PEOPLES STATE BANK OF WELLS, Respondent,

v.

### Shirley LUTTEKE, Defendant,

### Conger Co-operative Creamery Co., Appellant.

### No. C1–89–343.

Court of Appeals of Minnesota.

Sept. 19, 1989.
Review Denied Nov. 15, 1989.

Richard N. Davies, Peterson, Schlichting & Davies, Albert Lea, for respondent.

Chester D. Swenson, Albert Lea, for appellant.

Heard, considered and decided by KALITOWSKI, P.J., and FOLEY and THOREEN,* JJ.

### OPINION

FOLEY, Judge.

Respondent Peoples State Bank of Wells brought suit against appellant Conger Co-operative Creamery Co. for conversion of

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

farm products, namely milk. Conger purchased milk, in which Peoples Bank had a valid, perfected security interest, from Darrell and defendant Shirley Lutteke. The trial court granted summary judgment in favor of Peoples Bank against Conger. Conger now appeals from the summary judgment. Shirley Lutteke has not appealed from the judgment entered against her, she being in default on certain notes owed to Peoples Bank. We reverse.

## FACTS

Peoples Bank had a valid security interest in all inventory, equipment, farm products, consumer goods and general intangibles under its November 2, 1981 security agreement with the Luttekes, who were indebted to Peoples Bank. The security agreement provided: "Debtor will not sell or otherwise dispose of the Collateral or any interest therein without the prior written consent of Secured Party." Peoples Bank perfected its security interest by filing a financing statement with the county recorder on March 4, 1982.

From March 4, 1982 through April 16, 1985, the Luttekes sold milk to Conger. Conger issued checks twice per month payable to the Luttekes who in turn deposited the checks in their checking account at Peoples Bank. A course of dealing was established where the Luttekes were not required by Peoples Bank to secure written permission to sell milk to Conger. Peoples Bank was aware that the Luttekes were selling the milk. In July 1984, by telephone, Peoples Bank, through bank officer Hollerud, gave permission to Conger to issue the checks in the Luttekes' name only.

On April 3, 1987, after the Luttekes defaulted on their obligation, Peoples Bank brought suit against Conger based on the tort of conversion, alleging damages of $50,289.15, the amount due from the Luttekes. The trial court granted summary judgment in favor of Peoples Bank.

## ISSUES

1. Did Peoples Bank's oral consent to issue checks in the name of the Luttekes only, together with its conduct in extending credit to the Luttekes when they were in default on previous loans, waive the requirement of the security agreement for Peoples Bank's written consent?

2. Does the affidavit submitted by Conger's attorney comply with the requirements of Minn.R.Civ.P. 56.05?

## ANALYSIS

When reviewing an order granting summary judgment, this court must determine whether there are any genuine issues of material fact and whether the trial court erred in its application of the law. *L & H Transport, Inc. v. Drew Agency, Inc.*, 403 N.W.2d 223, 227 (Minn.1987) (citing *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979)).

1. Minn.Stat. § 336.9–306(2) (1980) provides:

Except where this article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor.

Minn.Stat. § 336.9–307(1) (1980) provides:

A buyer in ordinary course of business * * * *other than a person buying farm products from a person engaged in farming operations* takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence.

(Emphasis added.)

It is undisputed that Conger was buying a farm product from a person engaged in farming operations and that Peoples Bank did not give prior written consent for the sale. Furthermore, Peoples Bank's security interest in the milk continued despite the sale to Conger.

Conger argues that although Peoples Bank did not give *written* consent, its consent can be inferred from its knowledge that the sales were occurring, and its subsequent failure to object, and because Peo-

ples Bank gave oral consent to the Luttekes, constituting a waiver of its right to require written authorization.

▇ Peoples Bank concedes it was aware the Luttekes were selling milk to Conger, but does not address the question of whether there was an oral agreement between the parties. Support for the existence of the oral agreement and consent is found in the affidavit Conger's attorney submitted in opposition to the motion for summary judgment, as well as his affidavit submitted in support of Conger's motion to vacate summary judgment granted to Peoples Bank. The affidavit seeking vacation of the order for summary judgment states in part:

In the instant case not only is there a specific agreement by the bank to allow Mr. Lutteke to keep the proceeds of the milk check but also conduct on the part of the bank that indicates that it in fact made the agreement. * * * Mr. Lutteke needed funds to maintain his dairy herd. The only way he could receive those funds was to sell his milk daily. The bank knew this. *The bank also verbally agreed to this—a fact that [the attorney for Peoples Bank] had conceded.*

At the initial summary judgment hearing, the attorney for Peoples Bank stated:

We have filed affidavits of Mr. Hollerud concerning the amounts due and also [Conger's attorney] has filed a responsive affidavit, *and we're assuming that all of the facts as stated in [Conger's attorney's] affidavit are true and correct,* * * *.

Furthermore, the deposition testimony of Dianne Sailor, bookkeeper for Conger, and Ken Heine, Conger's manager, upon which Peoples Bank relied in moving for summary judgment, actually contains crucial and decisive evidence relating to a particular telephone conversation supportive of Conger's position on the issue of oral consent. These depositions were furnished to this court at oral argument on appeal.

In July 1984, Conger received a letter from Peoples Bank demanding Conger put Peoples Bank's name on the checks issued for milk sold to Conger by the Luttekes.

When Darrell Lutteke inquired about Peoples Bank being listed as a payee on the July check, Conger phoned Peoples Bank and it gave permission to Conger to issue the checks in the Luttekes' name only. Involved in the telephone conversation were Heine and Sailor from Conger, Hollerud from Peoples Bank, and Lutteke.

Peoples Bank was aware, prior to its request in July 1984, that the Luttekes were depositing checks from the milk sales, and were not applying all of the proceeds to repay their debt to Peoples Bank. In addition to allowing the Luttekes to determine the disposition of the milk proceeds, Peoples Bank extended additional loans to the Luttekes of over $30,000, even though the Luttekes were more than 18 months past due on a promissory note executed in November 1981. Peoples Bank's actions, which evidenced much more than simply a course of dealing, successfully operate to waive the requirement that consent to the disposition of secured collateral be in writing.

Support for this conclusion originates in caselaw and in the provisions of the Uniform Commercial Code. *Citizens National Bank of Madelia v. Mankato Implement, Inc.,* 427 N.W.2d 23 (Minn.Ct.App. 1988), involved a security agreement which required written consent before disposing of any collateral. There, we noted that oral consent to sell collateral was given by the bank president, and that the bank president agreed to and in fact encouraged the trading of the collateral to third parties.

We concluded that the bank, through its oral consent, clearly intended to waive its right to require written consent. The Minnesota Supreme Court affirmed this court and held:

*Wabasso* does not prohibit oral consent from operating as a waiver to a security agreement provision which requires written consent to sell collateral. This court affirms the trial court and court of appeals because the facts show that the bank waived its right to require a written authorization.

*Citizens,* 441 N.W.2d 483, 487 (Minn.1989).

Under *Citizens,* if there is an oral agreement where there is an "intentional relin-

quishment of a known right," and where waiver is clearly made "to appear from the facts disclosed," such oral consent effectively extinguishes a secured party's interest in the sale of the collateral despite a provision in the security agreement that such consent must be in writing. *Citizens,* 427 N.W.2d at 27.

It is evident in this case that the trial court, in granting summary judgment to the bank, relied on *Wabasso State Bank v. Caldwell Packing Co.,* 308 Minn. 349, 251 N.W.2d 321 (1976), which we are not compelled to follow. *Wabasso* is distinguishable in that it "only prohibits the use of course-of-dealing evidence to contradict written provisions." *Citizens,* 441 N.W.2d at 486. The Minnesota Supreme Court has all but overruled *Wabasso* in cases which involve oral consent to waive a written provision. Further, the Nebraska case of *Garden City Production Credit Association v. Lannan,* 186 Neb. 668, 186 N.W.2d 99 (1971), upon which *Wabasso* relies, has since been overruled. *See Farmers State Bank v. Farmland Foods, Inc.,* 225 Neb. 1, 402 N.W.2d 277 (1987). In *Farmers,* the Nebraska Supreme Court held:

> In this case we hold that the Bank's performance under the Bank–Hopwood security agreement was such that the Bank's conduct constituted, in effect, an amendment to the security agreement, in that the Bank waived its right to require its written consent to any sale of collateral by Hopwood. On over 130 occasions over 6 years (or approximately twice each month during that time), the Bank acquiesced in Hopwood's method of doing business and consented to it. On at least five occasions the Bank acquiesced not only in the sale of collateral but in Hopwood's failure to immediately apply the proceeds of such sales to the loan owing to the Bank. After 6 years of such conduct, the Bank would now have the courts hold that its business conduct in the marketplace is completely immaterial and that if such conduct results in a loss to the Bank, the Bank is entitled, as a matter of law, to point to the security agreement of 1977 and rely on the words of that agreement that there can be no

> waiver. We hold that the facts in this case were such as to permit the jury to find that the Bank, by its conduct, waived its contractual right with Hopwood to require that the Bank give written consent to any sale of collateral.

*Id.* at 6–7, 402 N.W.2d at 281. The Nebraska Supreme Court interpreted course of dealing as referring to conduct prior to the execution of the security agreement, as distinguished from post-agreement conduct. *Id.* at 7–9, 402 N.W.2d at 281–82. Minn.Stat. § 336.1–205(1) also restricts course of dealing to a sequence of *previous* conduct between the parties.

We conclude Peoples Bank's intent to waive its right to require written consent clearly appears from the facts here. Peoples Bank gave oral consent to the Luttekes to sell milk to Conger. Moreover, it gave consent to Conger to issue checks payable only to the Luttekes. Peoples Bank knew that its name was not being placed on the milk checks, it knew that the Luttekes were not using all of the money from the milk checks to repay their debt to Peoples Bank, it requested Conger put Peoples Bank's name on the milk checks, *and then it told Conger it could continue to issue checks only to the Luttekes. In addition, Peoples Bank did not require the Luttekes to obtain written authorization for each sale of milk nor did it require the Luttekes to turn over all of the proceeds.* All of this constitutes post-agreement conduct.

Accordingly, it would be unreasonable to conclude Peoples Bank intended to require written approval of each sale of milk after it showed an intent to waive that right. Indeed in this instance, we are compelled to invoke and apply the provisions of Minn. Stat. § 336.1–103, which provide that equity may be used to protect innocent buyers and to place responsibility for a loss on the party best able to prevent the harm. *See also First Bank of North Dakota v. Pillsbury Co.,* 801 F.2d 1036, 1039 (8th Cir. 1986).

In this case, the deposition testimony establishes that Conger did not know of Peoples Bank's security interest in the milk

until July 1984. Peoples Bank could have notified Conger immediately upon its knowledge that the Luttekes were selling milk to Conger. In essence, Conger is an innocent party and in this situation Peoples Bank must bear the loss because it was in the best position to control the disposition of the milk proceeds.

Through its oral consent and its conduct, Peoples Bank has shown an intentional relinquishment of a known right and has effectively waived its right to require written consent. *Citizens*, 427 N.W.2d at 27.

Because the issue of waiver and consent is dispositive of this case, we need not consider other errors claimed by Conger.

■ 2. We do note that Peoples Bank argues, for the first time on appeal, that the affidavit submitted by Conger's attorney does not comply with Minn.R.Civ.P. 56.05 because the attorney is and was Conger's counsel and therefore is not a competent witness under Minn.R.Prof.Conduct 3.7 (an attorney shall not act as advocate at a trial where such attorney may also be a witness). Peoples Bank stated at the summary judgment hearing that it assumed "all of the facts as stated in [Conger's attorney's] affidavit are true and correct."

Peoples Bank, however, may not seek review of an issue which it has failed to raise at the trial court level. Accordingly, review of this question is precluded on appeal. *See Morton v. Board of Commissioners of Ramsey County*, 301 Minn. 415, 223 N.W.2d 764 (1974) (generally, a party is not entitled to raise a question for the first time on appeal).

## DECISION

We reverse the trial court's grant of summary judgment to Peoples Bank and direct the trial court to vacate that judgment and enter summary judgment in favor of Conger.

Reversed.