**CHURCHILL BUSINESS CREDIT, INC., Plaintiff–Appellee,**

v.

**PACIFIC MUTUAL DOOR COMPANY, Defendant–Appellant.**

No. 94–2712.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 13, 1995.

Decided March 10, 1995.

Thomas J. Okeneski, Minneapolis, MN, argued for appellant.

Paul Laurin Ratelle, Minneapolis, MN, argued for appellee (Richard G. Jensen, on brief).

Before FAGG, LOKEN, and MURPHY, Circuit Judges.

DIANA E. MURPHY, Circuit Judge.

Pacific Mutual Door Company (PMD) appeals from the summary judgment ordered by the district court[1] in favor of Churchill Business Credit, Inc. (Churchill) on its claim of conversion. We affirm.

This controversy grows out of a business loan Churchill made to Sawyer–Cleator Lumber Company and its subsidiaries, Window Warehouse, Inc., and Millwork Supply Company (collectively Sawyer–Cleator) in March, 1990. As a condition of advancing funds, Churchill entered into security agreements with the companies which gave it security interests in their personal property, including existing and after-acquired inventory. The security agreements, which were properly filed with state and local authorities, provided that Sawyer–Cleator would not change "the location of any Collateral (except for sales of Inventory in the normal course of business) until [it] obtained the written con-

---

1. The Honorable David S. Doty, United States District Court Judge for the District of Minnesota.

sent of [Churchill]." Churchill Security Agreement at 15 (Sawyer dep. exh. 15, Appellant's app. at 161.) Sawyer–Cleator later turned over some of the collateral to PMD without Churchill's written consent, and Churchill claimed conversion. PMD responded that Churchill orally waived the consent requirement so the collateral was not converted.

PMD, a wholesale supplier of millwork products, had a longstanding business relationship with Sawyer–Cleator and permitted it to pay for goods with a thirty day revolving credit account. In 1990, however, PMD began requiring Sawyer–Cleator to pay cash on delivery because of an outstanding account balance. In August PMD refused to make any further sales to Sawyer–Cleator which then sought to return inventory to PMD in order to reduce its account balance. Although PMD was aware of Churchill's security interest in property of Sawyer–Cleator, it agreed to the return of the inventory, which was delivered on September 11, 1990. PMD credited Sawyer–Cleator's account with $95,-665.10.[2] Although Sawyer–Cleator hoped the return would restore the parties' business relationship, PMD did not resume sales. Instead, it sued Sawyer–Cleator in September, 1990 to recover on the past due accounts.

After Sawyer–Cleator went out of business in late 1990, Churchill brought this diversity action against PMD,[3] alleging that PMD unlawfully converted the returned collateral. The district court granted Churchill's motion for summary judgment, ruling that PMD failed to submit admissible evidence to support its affirmative defense that Churchill had waived the terms of its security agreement. On appeal, PMD contends that genuine issues of material fact preclude summary judgment on the question of waiver.

We review a district court's grant of summary judgment de novo, applying the same standards as the district court. *Dillaha v. Yamaha Motor Corp.,* 23 F.3d 1376, 1377 (8th Cir.1994). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.;* Fed. R.Civ.P. 56(c). The mere existence of some alleged factual dispute will not defeat a properly supported summary judgment motion; the dispute must be genuine. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.; Matsushita Elec. Indus. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The record must, however, be read in the light most favorable to the nonmoving party. *Celotex v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986).

Under the Uniform Commercial Code as adopted by Minnesota, a security interest continues in collateral "notwithstanding sale, exchange, or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise." Minn.Stat. § 336.9–306(2). If the secured party authorizes a sale, exchange, or other disposition, its interest is extinguished. Authorization may be shown by oral consent which acts as a waiver of a security agreement provision requiring that authorization to dispose of collateral be in writing. *Citizens Nat'l Bank v. Mankato Implement,* 441 N.W.2d 483, 486–87 (Minn. 1989). Waiver is the "intentional relinquishment of a known right" and must be clearly apparent from the circumstances. *Hauenstein & Bermeister, Inc. v. Met–Fab. Indus.,* 320 N.W.2d 886, 892 (Minn.1982).

---

2. The returned inventory consisted of two van loads of Andersen brand windows and some miscellaneous supplies. The amount of the credit was reached by discounting the manufacturer's list price for the returned items by 46 percent and by reducing an additional 6.5 percent on windows and 10 percent on other items for restocking expenses.

3. Churchill is a Minnesota corporation; PMD is incorporated in the state of Washington. Jurisdiction therefore arises under 28 U.S.C. § 1332, and the parties agree that Minnesota law governs.

PMD asserts it has submitted evidence which raises a genuine issue about waiver under Minnesota law. It points to the affidavit and deposition testimony of Sawyer–Cleator official Charlie Sawyer, who asserts that he told Churchill president Karen Turnquist and other Churchill employees that PMD was willing to accept inventory for return and would credit Sawyer–Cleator's accounts. He claims that Churchill "authorized [him] to negotiate and conclude the return for credit" with the understanding that PMD would continue to supply Sawyer–Cleator with materials. Sawyer aff. ¶ 11; Sawyer dep. at 92. PMD also points to the affidavit and deposition testimony of its St. Paul branch manager, Bruce Schneider, who stated that Sawyer told him Churchill had authorized the return. PMD argues that Sawyer's testimony, substantiated by Schneider's, raises an issue of fact about whether Churchill waived the written consent provision in the security agreement.

▆▆▆ PMD's evidence indicates at most that there is a factual dispute about whether Churchill authorized release of the collateral.[4] The existence of a factual dispute is not sufficient to preclude entry of summary judgment, however, where the evidence presented by the nonmoving party is insufficient to permit a finding in its favor on the disputed issue. See Celotex, 477 U.S. at 325, 106 S.Ct. at 2553–54; Anderson v. Liberty Lobby, 477 U.S. at 248, 106 S.Ct. at 2510; Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. PMD presented no evidence about the details of the alleged authorization or of Sawyer's discussions with Turnquist. Sawyer's vague

testimony is conclusory and lacks detail. It is insufficient under Minnesota law to raise a genuine question about whether Churchill knowingly waived its right to consent in writing before Sawyer–Cleator changed the location of the collateral.[5] See Citizens Nat'l Bank v. Mankato Implement, 441 N.W.2d at 487; Hauenstein & Bermeister, 320 N.W.2d at 892. Moreover, Schneider's testimony recounting what Sawyer allegedly told him does not raise a genuine fact issue because it is hearsay.[6] A party opposing a motion for summary judgment "must show that admissible evidence will be available at trial to establish a genuine issue of material fact." Financial Timing Publ. v. Compugraphic Corp., 893 F.2d 936, 942 (8th Cir.1990).

Because the district court found that PMD's evidence in support of its waiver defense was insufficient, it did not consider Churchill's alternate argument that the alleged waiver was conditioned on PMD continuing credit to Sawyer–Cleator, which it failed to do. Churchill asserts that PMD violated that condition by refusing to reestablish the former credit arrangement after return of the collateral.

▆▆▆ Minnesota courts have not passed on the issue of whether a security agreement continues under U.C.C. § 336.9–306(3) if conditions imposed by the authorizing creditor concerning disposition of collateral are not met. The courts of other states have considered the question, however, and have ruled that a security interest remains intact under such circumstances. Northern Commercial Co. v. Cobb, 778 P.2d 205 (Alaska 1989); Central Fin. Loan Corp. v. Bank of Illinois,

4. Turnquist stated in deposition testimony that she had not discussed return of merchandise with Sawyer. According to Turnquist, a Sawyer–Cleator employee broached the possibility of a return with a Churchill employee some time before August, 1990, and it was standard practice in such a situation for Churchill to require a borrower to submit a written proposal. Turnquist further testified that she had been unaware that Sawyer–Cleator had returned the collateral until early 1991, when Churchill discovered a document indicating an unusual credit to Sawyer–Cleator's PMD account.

5. PMD argues that Citizens Nat'l Bank v. Mankato Implement, 441 N.W.2d 483 (Minn.1989), supports its position that waiver is sufficiently shown. In that case, however, the testimony of the debtor was more detailed than that offered by PMD, and it was corroborated by independent testimony.

6. PMD argues that Schneider's testimony is not hearsay because Sawyer was acting as Churchill's agent during negotiations about the return. See Fed.R.Evid. 801(d)(2)(D). PMD has not established sufficient foundation for that proposition, however.

149 Ill.App.3d 724, 102 Ill.Dec. 965, 500 N.E.2d 1066 (Ct.1986); *Beatrice Nat'l Bank & Trust Co. v. Mid–America Dairymen, Inc.,* 220 Neb. 757, 372 N.W.2d 99 (1985); *Matteson v. Harper,* 297 Or. 113, 682 P.2d 766 (1984); *Southwest Washington Prod. Credit Ass'n v. Seattle–First Nat'l Bank,* 92 Wash.2d 30, 593 P.2d 167 (1979); *see also United States v. Winter Livestock Comm'n,* 924 F.2d 986, 992–93 (10th Cir.1991) (no consent to sale of collateral under Colorado U.C.C. § 4–9–306(2) where proceeds used in a manner different from that authorized); *Wegner v. Grunewaldt,* 821 F.2d 1317 (8th Cir.1987) (sale of collateral without continuation of security agreement would be invalid under South Dakota U.C.C. § 57A–9–306(2) if it were inconsistent with conditional authorization to sell).

We believe Minnesota courts would follow the majority of states that have considered this question and rule that, under Minn.Stat. § 336.9–306(2), a security interest in collateral continues where the conditions of release imposed by the secured party are not met. Accordingly, even if Sawyer's testimony were sufficient to raise a fact issue about waiver, Churchill is entitled to summary judgment on its conversion claim because of PMD's failure to meet a condition of the alleged agreement when it refused to reestablish Sawyer–Cleator's credit account.

For these reasons the judgment of the district court is affirmed.