190 So. 412

## ALABAMA POWER CO. v. CITY OF SCOTTSBORO et al.

### 8 Div. 986.

Supreme Court of Alabama.

June 1, 1939.

Rehearing Denied June 22, 1939.

Martin, Turner & McWhorter, of Birmingham, and D. P. Wimberly, of Scottsboro, for appellant.

234

Proctor & Snodgrass, of Scottsboro, for appellees.

Leader, Hill, Tenenbaum & Seedman, of Birmingham, Scott & Dawson and Leonard Crawford, all of Fort Payne, and B. W. Simmons, of App, amici curiae, in support of application for rehearing

FOSTER, Justice.

This is an appeal from the order of the Circuit Court of Jackson County denying appellant's motion for a preliminary in-

junction in a suit brought by appellant against appellee city and its officials to enjoin them from issuing and selling the revenue bonds of the city and using the proceeds of such sale in the construction and operation of an electric utility plant to be operated in competition with the electric utility system of the appellant in Scottsboro, without having obtained the consent of the Public Works Board of Alabama, or the Department of Finance, which has lately succeeded to all the rights and powers of said board.

It is alleged in the bill of complaint, as amended, that the appellant is a public utility corporation of the State of Alabama and that it is engaged in the public utility business in Scottsboro under a valid franchise now in force and effect. It is further shown that the city has entered into an agreement with the Public Works Administration for the issuance and sale of its revenue bonds for the purpose of constructing and operating an electric utility business; and that it now threatens to issue and sell such bonds for such purpose and has declared its intention so to do by filing with the Department of Finance a declaration in writing to this effect. Section 5 (20) of Act No. 112 of 1939, General Acts, approved March 7, 1939.

The theory of the bill of complaint as amended is that the issuance and sale of such revenue bonds without having obtained the consent thereto of the Public Works Board of Alabama (Gen.Acts 1935, pp. 151, 153) during its existence,—see Gen.Acts 1935, pages 195, 200,—or of the Department of Finance, which succeeded to the powers and authority of said Public Works Board of Alabama (Department of Finance Act of 1939, section 15, approved March 7, 1939), is in direct violation of these laws which prohibit, as unlawful, the issue and sale of such bonds without the required consent.

The primary questions involved here, therefore, are: 1. Whether the issue of such revenue bonds without the consent aforesaid is not an unlawful act on the part of the city. 2. Whether the use of the proceeds of the sale of such bonds for the purpose of constructing an electric utility plant to be operated in competition with appellant's existing plant without such consent will not constitute unlawful competition with appellant. 3. Whether appellant, as a taxpayer of the city, would be injured by such unlawful competition.

The motion for a temporary injunction was set down for hearing under section 8304, Code. The court refused to order the writ, and from his order doing so this appeal was sued out under section 8307, Code. The hearing was had on sworn bill and exhibits, and on defendants' plea in abatement and affidavit with exhibits.

The plea in abatement made the following allegations: "That on, to-wit, the 9th day of January 1939, the complainant, Alabama Power Company, filed its bill of complaint in this court against the identical respondents named in the present bill, in which the complainant prayed that the respondents, and each of them, be enjoined from executing the identical contract with the P.W.A. as that referred to in section 3 of the present bill * * *, and that, thereafter, on the 3rd day of February 1939, this court rendered a decree sustaining the respondents' demurrer to the bill of complaint and allowing the complainant thirty days within which to amend its bill; that, thereafter, on the 1st day of March 1939, the complainant filed an amendment to its bill of complaint, and the respondents reassigned their demurrer to the bill as last amended, and on the 8th day of March 1939, this court rendered another decree again sustaining the respondents' demurrer to the bill as last amended and dismissed said bill at the cost of the complainant, but that, thereafter, on the 11th day of March 1939, the complainant filed its security for the costs of an appeal to the Supreme Court from the decree of this court sustaining said demurrers and dismissing said bill, * * *, which said appeal was at the date of the filing of the present bill of complaint, and still is, pending in the Supreme Court of Alabama, and is undetermined, and is of record in the said Supreme Court of Alabama, undetermined and undismissed."

The affidavits were to the effect that under the Carmichael Act (H.B. 231, approved April 6, 1933, Gen.Acts 1933, Ex. Sess., p. 100), an election was duly held to determine whether the city should acquire an electrical distribution system under its authority, and that the result was favorable to doing so. Whereupon the United States, acting through the Public Works Administration and the city, made an agreement in writing whereby the United States agreed to make a grant to the city of approximately $59,000, and to purchase from the city bonds in the principal sum of $72,000, in denominations of

$1,000 each, dated November 1, 1938, payable over a period extending from 1942 to 1958, and payable from and secured by a pledge of a fixed amount of the gross revenues from the proposed light plant and system. There was no other obligation to be incurred by the city with respect to their payment, by which a debt was created. It was not to be an unconditional obligation to pay money.

Appellant here insists that notwithstanding the Carmichael Act does not require an approval of the bonds thus to be issued, it is required by House Bill 482, Lee Act approved June 26, 1935, pages 195, 200, and under the Public Works Board Act, approved February 12, 1935, House Bill 155, Harrison Act, pages 151, 153, and that the requirements of the latter acts cannot be ignored with respect to undertakings proposed to be had under the former (the Carmichael Act, supra), when they are of the sort described in the Lee Act.

With a view of considering that question, we will refer to some of the features of those acts. Under the Carmichael Act of 1933, an election must be held upon the question as a condition to an exercise of the authority to enter this field. The Lee Act of 1935 has no requirement for an election. The Carmichael Act provides that such undertaking must be conducted in conformity with it "and the law of the State pertinent thereto; but not otherwise." Section 1-A. It then provides that the necessary funds may be borrowed from the Reconstruction Finance Corporation, or any other lender, and the city could pledge as security or mortgage such plant and appurtenances, evidenced by instruments in such form as may be agreed upon. No reference is otherwise made to an issue of bonds.

The Lee Act of 1935, supra, called the "Municipal Revenue Bond Act of 1935," authorizes the cities to engage in such business, and to issue revenue anticipation bonds in one or more series, and to be sold at private sale to the United States or any agency thereof, or at public sale to others. The bonds are required to have all the indicia of what are called "bonds" in financial parlance. It then provides that they shall not be issued unless the Public Works Board shall grant its consent after a finding that "such issue and/or sale serves some public need, and is in the public interest." Section 14. Such a finding and consent are not necessary under the Carmichael Act. The Lee Act also provides that it is in addition and supplemental to and not a substitution for the powers conferred by other general, special or local law, and that bonds may be issued under it without regard to any other law, except as therein (Lee Act) provided.

The argument here made is that if there is an election held under the Carmichael Act, the issuance of bonds need not be approved by the Public Works Board, but if there is no election, they are subject to the Lee Act which requires such consent. That Act in section 14 provides that bonds or obligations authorized under it shall be issued and sold only with the consent of the Public Works Board. So that if the bonds here in question are such as are authorized by it (under section 15), they are issued under it without regard to any other law except as therein expressly provided.

No one could question the fact that the bonds here in question are exactly as there authorized. When so, by its express terms, they must be issued under it. True, that feature of section 15 must be considered in connection with the other one preserving intact other laws conferring such powers. Likewise, the latter is limited by the former.

This results in interpreting both acts together,[1] and reconciling them as far as possible, and when not possible, that which is the last expression must control.[2] We are not now dealing with bonds which create a direct obligation or debt of the city, and the election here referred to was not for the issuance of such bonds under section 222, Constitution. Randall v. State ex rel. City of Tuskegee, 233 Ala. 446, 172 So. 277.

In any event, there is a clearly defined distinction between an issue of bonds for general distribution either presently or later through a sale to a single purchaser usually called an underwriter, and thus subject to public purchase, and a loan of money by an individual secured by a mortgage or pledge of property, or upon a note even though it be under seal and therefore a bond. A bond issue is intended to be in

---

[1] 59 C.J. 1042 to 1049, sec. 620; Birmingham v. So. Exp. Co., 164 Ala. 529, 51 So. 159(5); Meridian L. Ins. Co. v. Dean, 182 Ala. 127 (6), 62 So. 90.

[2] 59 C.J. 1051, 1052, note 59, sec. 621.

such form as that it may be distributed among a number of investors, and running over a period of years, sometimes for sale on the open market, whereas a note and mortgage to a single lender are usually payable to him and mature at an earlier date. Parsons v. Birmingham, 223 Ala. 610, 137 So. 665.

■ The Carmichael Act makes no reference to an issue of bonds, but authorizes the borrowing of money from a lender secured by a pledge or mortgage evidenced by such instrument as may be agreed on. Such terms would undoubtedly be sufficient to justify a bond issue if that be the form agreed on. See Oppenheim v. Florence, 229 Ala. 50, 155 So. 859. But such form of security is only included by inference, whereas the terms used in the Act do not describe what is usually meant by a bond issue.

■ Then comes the Lee Act, and provides that when securities are to be in the nature of a bond issue as there described, and there authorized, the consent must be given after hearing. This means, we think, that the legislature has become aware of the importance of such consent and hearing upon the interests of the taxpayers of the city and of the public investors in such securities, which does not obtain in respect to single lenders of the money.

■ We think that when both acts are read together, they mean to fix a system of laws applicable to a transaction according to its substantive features, and not dependent upon whether there is a purpose to have the benefits of one without the strictures of the other, when they apply to that certain transaction. One does not have the privilege of determining that his conduct shall be governed by one act and not another, when it should be interpreted according to the nature of the proposed transaction, and the law applicable to such transactions.

■ So considered, we think it is the evident purpose of the legislature to require city bonds for electric utility purposes, when they are of the sort described in the Lee Act, to be governed by it. If the city wishes to borrow money for such purpose upon bonds which are the direct obligation of it, the municipal bond code and section 222, Constitution, would probably be the proper procedure. See Act of July 17, 1935, page 575, section 2 (13), amending the Act of September 10, 1927, Gen.Acts of 1927, pages 534, 535, § 6 (13). If the city wishes to borrow from a single lender on pledge and security, without an issue of bonds capable of being distributed to the public, the authority is in the Carmichael Act, without the consent of the Public Works Board, or its successor after a hearing.

The bonds here proposed are described in the proceedings as "negotiable, special obligation, electric plant revenue, serial coupon bond," and are subject to registration as to principal and payable to bearer or registered owner. Bonds authorized under the Lee Act, such as are described by it, are by it made negotiable. Section 5 (last clause).

■ But the securities issued under the Carmichael Act are not made by i negotiable, so that they are not so unless they possess the usual features of negotiability. And bonds as are now proposed are not the direct obligation of the city, and are not evidences of an unconditional obligation to pay money, and are not negotiable if supported only by the Carmichael Act. Oppenheim v. Florence, supra (syllabus 16).

But they are declared in these proceedings to be negotiable, but are not so unless by authority of the Lee Act. So that, although the city claims to be proceeding under the Carmichael Act, which does not require the consent of the Public Works Board or its successor, the securities proposed to be issued are such as are only authorized by the Lee Act, which requires such consent after hearing.

■ This appellant is so situated as to have the capacity to enjoin the city from exceeding its authority. Alabama Power Co. v. Fort Payne, Ala.Sup., 187 So. 632;[1] Coleman v. Eutaw, 157 Ala. 327, 47 So. 703; and cases cited in 17 Alabama Digest, States, page 643, ☞168½; 15 Alabama Digest, Municipal Corporations, page 258, ☞992, 993(3).

We assume that the trial court took into consideration the plea in abatement which we have heretofore mentioned. It may have had more or less influence in acting upon the motion for a temporary injunction which he denied. This plea alleges that the former suit was dismissed out of court before the instant bill was filed; and that an appeal had been taken by complainant which is the complainant here, and such

appeal was pending in this Court when it was filed.

We note that the question on this appeal is not whether this cause should be thereby abated, but whether by virtue of the fact of such plea and the matters therein alleged, it would be expedient and just to issue a temporary injunction in the light of the probability that this cause will be abated upon a hearing of that plea. The rule is of course understood that the pendency of another suit does not destroy jurisdiction, and until the later suit is abated, it may proceed. Strother v. McCord, 222 Ala. 450, 132 So. 717(9).

But the further progress, which is available, must be considered in the light of the existence of that plea. It is said that the tendency of the great weight of modern authority is to hold a plea in abatement in a second action setting up the pendency of a prior action not good where there has been a termination of the first action even after the filing of the plea. Beauregarde v. Capitol Amusement Co., Mass., 16 N.E.2d 672, 118 A.L.R. 1477, 1480; 1 Corpus Juris Secundum, Abatement and Revival, p. 111, § 71; 1 Amer.Jur. 30, section 19. But Alabama is listed as one of the few states taking a different view by virtue of Interstate Chem. Corp. v. Home Guano Co., 199 Ala. 583, 75 So. 166. Our section 5657, Code, is but a reenactment of the common law. Ex parte Barclay-Hays Lumber Co., 211 Ala. 500, 101 So. 179; Bruce v. Collier, 221 Ala. 22, 127 So. 553.

When the former suit was disposed of, but an appeal taken, which operates as a supersedeas, the pendency on appeal of the prior action is ground for abatement of the second begun after such appeal was perfected. 1 Corpus Juris Secundum, Abatement and Revival, p. 116, § 73; 1 Amer.Jur. 47, 48, section 44.

In view of such an array of modern authority against our case of Interstate Chem. Co. v. Home Guano Co., supra, we would not be willing to extend it beyond what is there held.

The former suit here had been dismissed and an appeal had been taken by giving security for costs. This may have been a supersedeas, but the only matter to supersede was execution for the costs.

We take judicial notice that the appeal has now been disposed of by affirming the decree dismissing that suit on a formal deficiency of pleading, but without prejudice to the right to file another suit. Why the necessity of being forced to dismiss the present suit so as to have the privilege of immediately filing it again? The courts are not here to enforce the frivolous technicalities which have no fixed basis in our jurisprudence. The suit had been dismissed, though reinstated by the appeal, when this suit was filed, and it now stands dismissed. True the appeal may have suspended the dismissal and the affirmance may be the real dismissal, which was after this suit was begun, and after the plea filed. But after the appeal was taken the complainant may have had occasion to discover a right to an injunction not then considered or included, and recognizing a possibility of an affirmance filed the second suit so as to preserve his rights in that event, and so as to preserve a status quo pending a hearing.

We discover that the claim of right to relief in the second suit is on a different principle, and one which we have herein held good. The right to file such a suit is now open, though in the exact language of this one. Since, when the trial court was acting on this motion, this cause had not been abated, and the former suit was in the same court, and he had cognizance of its form and nature, he could very well have taken the view we are now taking, since he was not acting on the plea, but only its effect on the motion for temporary injunction.

Therefore, while we are now only reviewing the ruling of the trial court, and while the appeal in the former suit had not been disposed of then by this Court, the effect of the plea on a right to temporary injunction was acted on by the court on that motion with knowledge that the bill then on appeal was deficient and had been so held by him. So, as we review his ruling, it is with like knowledge by us, with the added circumstance as a strengthening influence, that we have agreed with him in his holding that such bill was insufficient. Under such circumstances, we do not think the plea in abatement should have controlling influence to refuse a temporary injunction otherwise due to be issued.

For the reasons which we have stated, we think that a temporary injunction was due to be issued upon the hearing of the application made for it by appellant.

After the submission of this cause appellant made a motion in this Court for a

temporary injunction in the nature of a restraining order to prohibit the city authorities from transferring, expending or disbursing any of the funds derived from a sale of such bonds until the further orders of this Court, alleging that after said submission, and on May 18, 1939, the city received $70,000 from the United States through the Public Works Administration, and delivered its bonds to the United States in that amount for such sum.

This Court, acting through the Chief Justice, granted said application upon the execution of a bond in the penal sum of $5,000, conditioned and payable as thus required.

The right to issue such order is challenged by appellees on motion to discharge it. They make contention that when a motion for a temporary writ of injunction is set down under section 8304, Code, and complainant is dissatisfied, he should immediately apply to a justice of the Supreme Court if he wishes to do so under section 8310, Code, and that if he fails to do so, and a temporary writ is denied by the circuit judge on such hearing complainant can only appeal and cannot have the benefit then of section 8295, Code. Such is truly a correct statement of the rule. Howle v. City of Birmingham, 229 Ala. 666, 159 So. 206; Zimmern v. Southern Ry. Co., 206 Ala. 69, 89 So. 171; Lee v. City of Birmingham, 221 Ala. 419, 128 So. 902.

But it is not by virtue of such statutes that the Court has ordered here a temporary injunction pending this appeal. But it is by virtue of the inherent power of this Court which has frequently been used to preserve the status quo as to property and rights pending an appeal in a suit involving such rights upon a prima facie showing that they are about to be injuriously disturbed. 4 Corpus Juris Secundum, Appeal and Error, p. 1105, § 621, p. 1118, § 632; 3 Corpus Juris 1270, section 1387, also 1281, 1282; 3 Amer.Jur. 196 and 197, note 15; In re Alexander McKenzie, 180 U.S. 536, 21 S.Ct. 468, 45 L.Ed. 657.

It was upon such a showing that a temporary injunction has been issued by this Court to be effective pending this appeal, and until the further orders of this Court.

When persons acquire property subject to a suit in equity, and while it is pending (not now considering lis pendens statutes), it is subject to the result of that suit, though there may not have been a temporary injunction theretofore issued. Holden v. Alton, 179 Ill. 318, 53 N.E. 556; see Bolling v. Carter, 9 Ala. 921.

We emphasize the fact that the injunction which has been issued by this Court does not affect the right of the city to proceed with the construction of its electric distribution system, but it only relates to the bonds and its proceeds. When a cause is pending in equity, the power of its jurisdiction is not to be curtailed by dealings of the parties. The purchaser of the bonds pending suit is subject to the power of the court to make restitution of them, if it is held that their issuance was contrary to law, and was sought to be prevented in said suit.

The fact that there was a contract of sale in existence when this suit was filed is not controlling. A city can be enjoined from performing a contract made in violation of law, and its corporate power.

We are not here considering a demurrer to the bill for insufficiency of parties as we were in Turnipseed v. Blan, 226 Ala. 549, 148 So. 116, in which we held that a bill for an injunction against paying State warrants was subject to demurrer unless their holders, or if numerous enough to represent the class (Chancery Rule 19), were made parties. But we recognized the right and duty to issue a temporary injunction in the absence of such parties, if payment of the funds were impending, so that the money would not be placed beyond the power of the court, but that before the injunction is made permanent such holders should be brought in as parties. Whether the United States, and its agency the Public Works Administration, which is a party to this transaction, must be brought into this suit, and, if so, how that is done, are questions not now considered. Baisden v. City of Greenville, 215 Ala. 512, 111 So. 2.

It is therefore ordered by the Court that the motion to discharge the temporary injunction in the nature of a restraining order be and is overruled.

It is further ordered that the decree of the circuit court, in equity, overruling the motion of appellant be, and it is, reversed, and a decree is here rendered directing that the restraining order heretofore issued by this Court shall be and is hereby made to serve as a temporary injunction to the same extent as though it were ordered by

the circuit court, and to remain in force until the further orders of that court, for which the bond heretofore executed in this Court shall also continue in force and effect. The motion to discharge is overruled.

Reversed, rendered and remanded.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.