**EDINA DEVELOPMENT CORPORATION, a/k/a Edina Development, Inc., Appellant,**

v.

**Larry HURRLE, a/k/a Lawrence C. Hurrle, et al., Respondents.**

No. A03–32.

Court of Appeals of Minnesota.

Oct. 21, 2003.

Larry M. Wertheim, Kennedy & Graven, Chtd., Minneapolis, MN; and John J. Berglund, Scott C. Baumgartner, Berglund & Baumgartner, Ltd., Anoka, MN, for appellant.

Gary A. Van Cleve, Christopher J. Deike, Larkin, Hoffman, Daly & Lindgren, Ltd., Bloomington, MN, for respondents.

Considered and decided by KLAPHAKE, Presiding Judge, PETERSON, Judge, and HALBROOKS, Judge.

## OPINION

HALBROOKS, Judge.

On appeal from summary judgment, appellant argues that the district court erred in holding that it did not have the right to exercise its option under an option agreement because appellant did not fulfill all of the conditions of a separate agreement to purchase 162 acres of land. Because we conclude that the district court did not err, we affirm.

## FACTS

Respondents Larry Hurrle, Carol Hurrle, and Timothy Hurrle are family farmers. They own and rent farmland in Sherburne, Stearns, and Wright counties where they conduct business under the name Hurrle Farms. Hurrle Farms is primarily a cash-crop operation.

In 1996, Hurrle Farms planted over 5,000 acres of crops, including over 2,000 acres of corn. Later that year, herbicide was over-applied to parts of respondents' land, destroying much of respondents' corn crop and resulting in a major reduction in yield. Respondents never recovered from the financial impact of the lost crops, and in 1998, they filed for chapter 11 bankruptcy relief. Respondents were forced to enter into various amendment and extension agreements with their major creditor, Ag Services of America, Inc. Part of the agreement required respondents to execute and deliver into escrow warranty deeds for certain pieces of property and provided that Ag Services would be allowed to record the deeds if certain specified defaults occurred.

In an attempt to relieve some of the growing financial pressure, respondents decided to sell portions of their farmland. On October 13, 1999, respondents agreed to sell some parcels of land located in Sherburne County to appellant Edina Development Corporation. The parties entered into three separate agreements. The first was a purchase agreement for approximately 438 acres (438–acre agreement); the second was a purchase agreement for approximately 162 acres (162–acre agreement); and the third was an exclusive-option agreement (option agreement) that gave appellant the option to purchase an additional 914 acres. The purchase price was $10,000 per acre under all three agreements.

The agreements were subject to the approval of Ag Services. In approving the agreements between respondents and appellant, Ag Services required respondents to "take prompt action to enforce all remedies available" under the purchase agreements and the option agreement. The dates for the debt payments from respondents to Ag Services were designed to correspond with the dates for appellant's payments to respondents under the two purchase agreements.

The option agreement gave appellant the option to purchase an additional 914 acres if written notice of its election of purchase was provided to respondents by May 15, 2002. The option agreement included the following language, which is of significance in resolving the primary issue on appeal: "Notwithstanding anything else apparently to the contrary in this agreement, buyer may exercise this option only if it is not in default under the purchase agreement [1] with owner of even date herewith referenced above and has fully performed in accordance with its terms."

Under the terms of the 162–acre agreement, appellant was to pay respondents $1,620,000 on the closing date, December 31, 2001. But the closing did not occur. On January 10, 2002, respondents served appellant with a notice of cancellation of the 162–acre agreement as required by Minn.Stat. § 559.21, subd. 4 (2002), and pursuant to their agreement with Ag Services. By letter dated January 17, 2002, appellant acknowledged that it did not have the resources to close on the 162–acre agreement on time. Appellant stated in the letter that it still wanted to purchase the 162 acres pursuant to the terms of the 162–acre agreement, but at a later closing date. Because appellant failed to close on the 162–acre agreement, respondents were unable to make their debt payment to Ag Services.

On February 11, 2002, the day before the 162–acre agreement was to be terminated pursuant to the notice of cancellation, appellant filed a complaint asking the court to declare that appellant was not in default under the terms of the 162–acre agreement. Appellant also moved for a temporary restraining order to prevent cancellation of the 162–acre agreement. Respondents were not served with the complaint or the motion for a temporary restraining order. The court granted appellant's ex parte motion for a temporary restraining order pending resolution of appellant's motion for a temporary injunction.

On May 8, 2002, the parties entered into a stipulation dissolving the temporary restraining order and allowing appellant to close on the 162–acre agreement. The stipulation, among other conditions, set a closing date of May 14, 2002 and required appellant to pay respondents (1) $5,000 in attorney fees, (2) additional interest due to respondents' inability to make the $2,000,000 payment to Ag Services, (3) $1,620,000 for the 162–acre parcel as set forth in the 162–acre purchase agreement, and (4) $387,100 for the still-unpaid portion of the 438–acre agreement. The closing on the 162–acre agreement took place on May 14, 2002.

In a letter dated May 14, 2002, appellant notified respondents of its election to exercise its option to purchase an additional 914 acres of land from respondents under the option agreement. Respondents rejected appellant's exercise under the option agreement based on appellant's failure to fully perform the 162–acre agreement in accordance with its terms.

On July 31, 2002, appellant filed a complaint asserting breach of contract and seeking specific performance of the option agreement or damages. Respondents moved for summary judgment. The district court granted respondents' motion for summary judgment, finding that because appellant failed to fully perform the 162–acre agreement in accordance with its terms, it did not have the right to exercise its option under the option agreement. This appeal follows.

1. The parties agree that this reference is to the 162–acre agreement.

## ISSUES

I. Did the district court err in holding that appellant did not have the right to exercise its option under the option agreement because it did not fulfill a condition of the agreement that required full performance of the 162–acre agreement in accordance with its terms?

II. Did the parties' May 8, 2002 stipulation modify the closing date of the 162–acre agreement from December 31, 2001 to May 14, 2002 so as to result in appellant's full performance of the 162–acre agreement in accordance with its terms?

III. Did the district court err in holding that respondents did not waive their right to claim that appellant did not fully perform the 162–acre agreement in accordance with its terms when they agreed to close on May 14, 2002?

## ANALYSIS

### I.

■■■■ Appellant argues that the district court erred in holding that appellant did not have the right to exercise its option under the option agreement because it did not fulfill a condition of the option agreement that required appellant to perform the 162–acre agreement in accordance with its terms. On an appeal from summary judgment, we ask whether there are any genuine issues of material fact and whether the district court erred in its application of the law. *DLH, Inc. v. Russ,* 566 N.W.2d 60, 69 (Minn.1997). A motion for summary judgment shall be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, demonstrate that there are no genuine issues of material fact and that either party is entitled to judgment as a matter of law. Minn. R. Civ. P. 56.03. On appeal, we must view the evidence in the light most favorable to the party against whom summary judgment was granted. *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993). Both parties essentially concede that there are no genuine issues of material fact and that summary judgment is appropriate in this case.[2]

■■■■ Thus, the only issue is whether the district court erred as a matter of law in its interpretation of the option agreement. Generally, interpretation of the terms of a contract is a question of law that this court reviews de novo. *Art Goebel, Inc. v. N. Suburban Agencies, Inc.,* 567 N.W.2d 511, 515 (Minn.1997). When interpreting a contract, its language is to be given its plain and ordinary meaning. *Brookfield Trade Ctr., Inc. v. County of Ramsey,* 584 N.W.2d 390, 394 (Minn.1998). We interpret a contract's terms in the context of the entire contract, and we interpret a contract to give meaning to all of its provisions. *Id.* "An option [contract] must be construed strictly in favor of the maker and must be accepted according to its

2. Appellant conceded in the district court that there were no issues of material fact. On appeal, appellant maintains that there are essentially no genuine issues of material fact, but contends that, if and only if, this court rejects all of its theories there may be a genuine issue of material fact as to whether appellant was in default under the 162–acre agreement for failing to close on December 31, 2001. But because appellant did not assert in the district court that there are genuine issues of material fact, the issue is not properly before this court on appeal. *See Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988) (stating that this court will generally not consider matters not argued and considered in the district court).

terms." *Abrahamson v. Abrahamson*, 613 N.W.2d 418, 423 (Minn.App.2000).

It is undisputed that appellant exercised its option under the option agreement in a timely manner. It is also undisputed that the option agreement contains a condition precedent that allows appellant to exercise the option "only if" appellant has "fully performed" the 162–acre agreement "in accordance with its terms." Neither party contends that the language of the condition precedent is ambiguous, but each party asserts a different interpretation of the language. Appellant contends that, when it closed on the 162–acre agreement before respondents completed statutory cancellation of the agreement under Minn.Stat. § 559.21 (2002), it fully performed the agreement in accordance with its terms and, thus, fulfilled the condition precedent in the option agreement. In contrast, respondents contend that, when appellant did not close on the 162–acre agreement on December 31, 2001, as specifically required by the purchase agreement, it failed to fully perform the 162–acre agreement in accordance with its terms and, thus, failed to fulfill the condition precedent in the option agreement. The central issue on appeal is whether performance of the 162–acre agreement after December 31, 2001, but before respondents could lawfully cancel the agreement, constituted full performance.

■ Real estate purchase agreements are unique because they are subject to the provisions of Minn.Stat. § 559.21. Under Minn.Stat. § 559.21, subd. 2a, if a default occurs in the conditions of a contract for the conveyance of real estate, the seller has a right to cancel the contract. But in order to terminate the contract, the seller must serve the buyer with a notice of cancellation stating "the conditions in which default has been made" and that, in the case of a purchase agreement, the contract will be terminated in 30 days unless prior to the termination date, the buyer complies with the conditions of default, makes all payments due and owing under the contract, pays the costs of notice, and pays the required amount of attorney fees. Minn.Stat. § 559.21, subds. 2a, 4(a). Courts have the authority, before the termination date and subject to the requirements of Minn. R. Civ. P. 65, to enter an order temporarily restraining the termination of the contract. Minn.Stat. § 559.211, subd. 1 (2002). If a temporary restraining order is granted, the buyer has 15 days from the date the temporary restraining order is dissolved before the contract is terminated. *Id.* If the buyer complies with the requirements of the notice of cancellation before the termination date, the contract is reinstated. If not, the contract is cancelled. Minn.Stat. § 559.21, subd. 4(c), (d) (2002). The purpose of these statutory provisions allowing for termination and reinstatement is to provide buyers with notice of impending cancellation and to avoid the harsh result of forfeiture by allowing buyers a reasonable time to remedy their default. *Thomey v. Stewart*, 391 N.W.2d 533, 535 (Minn.App.1986).

■ Relying on *Larkin v. Glens Falls Ins. Co.*, 80 Minn. 527, 83 N.W. 409 (1900), appellant argues that the provisions of Minn.Stat. § 559.21 became terms of the 162–acre agreement, allowing appellant to fully perform the purchase agreement in accordance with its terms as long as it closed on the agreement before it was cancelled. We disagree. *Larkin* states, "[W]here parties contract upon a subject which is surrounded by statutory limitations and requirements, they are presumed to have entered into their engagements with reference to such statute, and the same enters into and becomes a part of the contract." 80 Minn. at 531, 83 N.W. at 410. But while the provisions of Minn.

Stat. § 559.21 inform and are statutorily implied into a contract for the conveyance of real estate, they do not become express terms of the contract.

Here, the 162–acre agreement set a specific closing date of December 31, 2001. When appellant failed to close on December 31, 2001, it was in default under the terms of the agreement. Nevertheless, the provisions of Minn.Stat. § 559.21 allowed appellant to salvage the agreement. Under the statute, before respondents could cancel the agreement as a result of appellant's default, they were required to provide appellant with notice of cancellation and to give appellant 30 days from the service of the notice of cancellation to meet the conditions for reinstatement. On May 14, 2002, appellant met the reinstatement conditions, which gave it the right under Minn.Stat. § 559.21 to enforce the terms of the 162–acre agreement and to complete the transaction even though it had not fully performed the agreement in accordance with its terms. But while the provisions of Minn.Stat. § 559.21 enabled appellant to enforce the 162–acre agreement (in spite of its terms), appellant did not fully perform the agreement in accordance with its terms. The option agreement required appellant to fully perform the 162–acre agreement in accordance with its terms. Therefore, we conclude that the district court did not err in holding that appellant did not have the right to exercise its option under the option agreement.

## II.

Appellant argues that the 162–acre agreement was modified by the parties' May 8, 2002 stipulation to dissolve the temporary injunction. Under the terms of the stipulation, the parties agreed to a new closing date for the 162–acre agreement of May 14, 2002. Thus, appellant argues, when the 162–acre agreement closed on May 14, 2002, appellant fully performed the 162–acre agreement in accordance with its terms and was entitled to exercise its option under the option agreement.

Appellant did not present this theory to the district court; therefore, it is not properly before this court on appeal. *See Thiele*, 425 N.W.2d at 582 (stating that this court will generally not consider matters not argued and considered in the district court). Even if we were to consider appellant's modification theory on its merits, appellant's argument is not persuasive. The parties' stipulation set forth the terms of appellant's exercise of its statutory-reinstatement rights under Minn.Stat. §§ 559.21, .211 (2002). It did not constitute a modification of the parties' 162–acre agreement.

## III.

■ Finally, appellant contends that respondents waived any claim of breach of the 162–acre agreement caused by appellant's failure to close on December 31, 2001 when respondents agreed to the later closing date of May 14, 2002. "In order for an action to constitute a waiver, there must be an intentional relinquishment of a known right, and it must clearly be made to appear from the facts disclosed." *Citizens Natl. Bank of Madelia v. Mankato Implement, Inc.*, 441 N.W.2d 483, 487 (Minn.1989) (quotations omitted). The record here does not support a conclusion that respondents intentionally relinquished a known right. Under Minn.Stat. § 559.211, subd. 1, appellant was allowed to close on the 162–acre agreement before expiration of 15 days from the date of the order dissolving the temporary restraining order. In addition, the stipulation included the following paragraph:

[Respondents] acknowledge that they received a letter from [appellant] dated April 29, 2002, in which [appellant]

states that it intends to exercise its option to acquire 914 acres of additional land owned by [respondents]. This acknowledgement of receipt of the letter is not intended to make any representation, admission or agreement concerning the legal effect of this letter.

The district court did not err in holding that respondents did not waive their rights under the option agreement.

### DECISION

The district court did not err in holding that appellant is not entitled to exercise its option under the option agreement because it did not fully perform the 162–acre agreement in accordance with its terms.

**Affirmed.**